2003 OK 53

Heather V. EVERS and Derek Evers, Plaintiffs/Appellants,

v.

FSF OVERLAKE ASSOCIATES, an Oklahoma Limited Partnership; D.G.M. Overlake, Inc., a suspended Delaware Corporation; Trust Property Management, Inc., an unincorporated or unregistered association, Defendants/Appellees.

No. 97470.

Supreme Court of Oklahoma.

May 20, 2003.

John D. Mashburn, Oklahoma City, OK, for Plaintiffs/Appellants.

Gary S. Chilton and Heidi Jo Long, Oklahoma City, OK, for Defendants/Appellees.

BOUDREAU, J.

¶ 1 Heather and Derek Evers filed suit against the owners and managers of an apartment complex in Bethany, Oklahoma, as well as other unnamed defendants, who resided in the adjoining apartment during the operation of a methamphetamine drug lab. The Evers' petition alleges that in March 2000, they along with other tenants began to notice strong smells in and around the apartment building. Shortly thereafter, the Evers and other tenants began to complain about the smells to the management and owners of the apartment complex.

¶ 2 After the advent of fumes, Heather Evers claims she became ill with headaches, dizziness and a variety of debilitating symptoms, which eventually made it impossible for her to go to work and resulted in her spending even more time in the apartment. In May 2000, approximately two months after the initial complaints began, Heather says she once again complained to the apartment staff. In response, an apartment security officer was sent to investigate the origin of the smell. The security company officer believed the smell to be the result of illegal drug activity. The police raided the apartment adjoining the Evers' apartment and discovered a methamphetamine drug lab in the bathroom, which shared a wall and ventilation system with the Evers' apartment. After the police raid, the Evers terminated their lease.

¶ 3 In their petition, the Evers assert that the materials used to manufacture the methamphetamine are highly toxic and carcinogenic. The Evers allege the owners and management personnel of the complex knew or should have known of the dangerous condition posed by the illegal manufacture of drugs in the adjacent apartment and negligently failed to warn or protect the tenants of the danger. The Evers claim these failures resulted in Heather becoming very ill, with residual reproductive complications and increased risk of future illness, such as cancer.

¶ 4 Defendants, FSF Overlake Associates, D.G.M. Overlake, Inc. and Trust Property Management, moved for summary judgment. In their summary judgment motion, Defen-

dants argued they owed no duty to the Evers to maintain an apartment community free from criminal activity and even if a duty was owed, the criminal acts of third parties caused the Evers harm and not any negligence on the part of the property managers or owners.

¶ 5 The trial court granted Defendants' motion for summary judgment. Plaintiffs moved for a new trial. This motion was denied and Plaintiffs appealed. The Court of Civil Appeals, determined the Evers failed to provide sufficient evidence of injury and failed to adequately link any alleged injuries to exposure to methamphetamine or its components. As a result, the Court of Civil Appeals determined the trial court did not err in granting the summary judgment. The Evers sought certiorari to this Court, asserting that the Court of Civil Appeals affirmed Defendants' summary judgment based upon an issue not tried or raised at the court below, namely the extent and cause of the Evers' physical injuries.

### I. Standard of Review

¶ 6 We note this case comes on appeal from Plaintiffs' motion for a new trial. The standard of review on appeal in examination of the trial court's denial of a new trial motion is abuse of discretion. *Jones, Givens, Gotcher & Bogan v. Berger*, 2002 OK 31, 46 P.3d 698, 701; *Austin v. Cockings*, 1994 OK 29, 871 P.2d 33, 34. However, in this case the propriety of the trial court's denial of the new trial motion rests on the correctness of the trial court's grant of summary judgment. Therefore, we must examine by de novo review the trial court's decision on summary judgment in order to determine whether the trial court abused its discretion in denying the new trial motion. *See Manley v. Brown*, 1999 OK 79, 989 P.2d 448, 455.

### II. Content of Defendants' Summary Judgment Motion

¶ 7 FSF Overlake Associates, D.G.M. Overlake, Inc. and Trust Property Management, Inc., the Defendants, owners and managers of the apartment complex, filed their motion for summary judgment arguing that 1) they owed no duty to the Evers to main-

tain a crime-free apartment environment, 2) even if they owed a duty, the Evers' injuries were caused by the intentional crimes of third parties, which was a supervening cause of any alleged injuries, and 3) they could not be liable for misrepresentation, because Plaintiffs did not rely on any allegedly false statements by any of the Defendants.

¶ 8 In support of this motion, Defendants set out the following "uncontroverted facts":

1. In May 2000, the Overlake Apartments, located at 7902 N.W. 21st Street in Bethany, Oklahoma, were owned by FSF Overlake Associates;

2. In May 2000, the Overlake Apartments were managed by Trust Property Management, Inc.;

3. The Plaintiffs resided in Unit E–20 at the Overlake Apartments from July 1999 through May 22, 2000;

4. Unit E–19, the apartment adjacent to Unit E–20, was raided by the Bethany Police on May 18, 2000, and an illegal methamphetamine laboratory was discovered;

5. The parties arrested in connection with the methamphetamine laboratory did not have prior criminal records;

6. Following the police raid, the plaintiffs immediately gave notice of termination of lease and moved from the Overlake Apartments;

7. After the police raid, the plaintiffs resided in a different apartment unit until they were able to physically move from the Overlake Apartment community;

8. Beginning December 1, 1999, at the latest, Overlake requested all residents to sign a "Lease Addendum for Drug-Free Housing".

### III. Defendants' Motion Does Not Entitle Them to Judgment Through Summary Process

¶ 9 A motion for summary judgment is a request for an adjudication on the merits of the case. It is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any

material fact and the party moving for summary judgment is entitled to judgment as a matter of law. *Markwell v. Whinery's Real Estate, Inc.*, 1994 OK 24, 869 P.2d 840, 845. The moving party has the burden to show there is no substantial controversy as to any material fact. *Bowers v. Wimberly*, 1997 OK 24, 933 P.2d 312, 315. In demonstrating that no material fact exists, the moving party must present a concise written statement of the material facts as to which the movant contends no genuine issue exists. Rule 13, Rules for the District Courts of Oklahoma, 12 O.S.2001, Ch. 2, app. 1; *Hadnot v. Shaw*, 1992 OK 21, 826 P.2d 978, 984. The movant must attach to the statement copies of the acceptable evidentiary substitutes relied upon to support the motion. *Finally, the movant must offer a statement of argument and authority demonstrating why the undisputed material facts entitle the movant to judgment as a matter of law. See* Rule 13, Rules for the District Courts of Oklahoma, 12 O.S.2001, Ch. 2, app. 1. This burden exists whether or not any counter statement is filed by the non-moving party. *Union Oil Co. v. Bd. of Equalization*, 1996 OK 40, 913 P.2d 1330, 1334.[1]

■ ¶ 10 In arguing they are entitled to summary judgment, Defendants assert that they owed no duty to the Evers to maintain a crime-free apartment environment. They contend that the obligation to keep a unit "safe" is not intended to make the landlord the guarantor of the tenant's safety and does not create an obligation on the landlord to insure against criminal attack.[2] While a landlord does not guarantee tenant safety, a landlord who retains possession of a portion of the leased premises, for use in common with other tenants, must use reasonable care to keep that portion of the premises over which he has maintained control in a safe condition. *See Staples v. Baty*, 1952 OK 98, 206 Okla. 288, 242 P.2d 705, 707 (tenant injured when a common use staircase collapsed underneath her); *see also Lay v. Dworman*, 1986 OK 85, 732 P.2d 455, 459 (court rejected concept that the landlord/tenant relationship itself gives rise to a duty to guard the tenant's safety, but found landlord who failed to repair faulty lock was liable for injuries resulting from tenant's rape, because the tenant requested the lock be repaired and repair of the locks was in exclusive control of landlord).

■ ¶ 11 In their petition, Plaintiffs claim that Defendants have retained control over a portion of the leased premises, specifically the ventilation system (heat and air), for use in common with other tenants. They claim that Defendants knew or should have known of a dangerous condition affecting the ventilation system posed by the manufacture of drugs in the adjacent apartment. They argue that Defendants breached their respective duties to use reasonable care to maintain the ventilation system by failing either to remove or to warn Plaintiffs of the dangerous condition posed by the system.

■ ¶ 12 Whether a negligent defendant stands in such a relationship to a plaintiff that the law imposes upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff is a question for the court. *Wofford v. Eastern State Hosp.*, 1990 OK 77, 795 P.2d 516. In their petition, Plaintiffs

---

1. It is only after the moving party meets this burden that the non-moving party must then demonstrate the existence of a material fact that would justify a trial of that issue. *Hughey v. Grand River Dam Authority*, 1995 OK 56, 897 P.2d 1138, 1143; *Bowers v. Wimberly*, 1997 OK 24, 933 P.2d 312, 315. There is considerable latitude given a non-moving party and, in fact, the party against whom a summary judgment motion is directed can use the movant's own evidentiary materials to establish the existence of a controverted fact. *Hadnot v. Shaw*, 1992 OK 21, 826 P.2d 978, 984–85.

2. A landlord has a basic duty to "[m]ake all repairs and do whatever is necessary to put and keep the tenant's dwelling unit and premises in a fit and habitable condition" and "[m]aintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air-conditioning and other facilities and appliances, including elevators, supplied or required to be supplied by him[.]" 41 O.S.2001, § 118(A)(2)-(3). This Court determined that keeping a unit "safe" is not intended to make the landlord the guarantor of the tenant's safety and does not create an obligation on the landlord to insure against criminal attack. *Cordes v. Wood*, 1996 OK 68, 918 P.2d 76, 78–79; *Mengel v. Rosen*, 1987 OK 23, 735 P.2d 560, 562.

have alleged specific facts, which if true, would give rise to a duty on the part of the Defendants. The statement of uncontroverted facts offered by the Defendants fails to offer any facts to counter the specific factual allegations made by the Plaintiffs. While the statement acknowledges the presence of criminal activity in the apartment adjoining that of the Plaintiffs', this Court has held that the mere presence of criminal activity does not absolve the landlord of all duty with regard to the leased premises. *Lay v. Dworman*, 732 P.2d at 459–60. On their face, the uncontroverted facts are insufficient to allow the trial court to draw any legal conclusion on the issue of duty in this case.

¶ 13 Second, in examining Defendants supervening cause argument, we note a supervening cause is a legal mechanism that breaks the chain of causation between an original actor and the injury to a plaintiff. A supervening cause effectively shields the original actor from liability, because it renders the original actor's breach of duty incidental or inoperatively remote or one which the original actor could not reasonably have foreseen or anticipated. The test for supervening cause is threefold: 1) the supervening act must be independent of the original act; 2) the supervening act must be adequate of itself to bring the result; and 3) the supervening act must not be reasonably foreseeable. *See Thompson v. Presbyterian Hosp., Inc.*, 1982 OK 87, 652 P.2d 260, 264; *Strong v. Allen*, 1989 OK 17, 768 P.2d 369, 371.

¶ 14 Again, Defendants' statement of material facts, alleged to be undisputed, does not offer any facts upon which the defense of supervening cause can be decided as a mat-

ter of law. In fact, a review of Plaintiffs' petition casts doubt on whether the Defendants can be considered original actors for purposes of applying the defense. In the petition, Plaintiffs' make factual allegations against Defendants in which Defendants' actions are subsequent and secondary to the criminal acts which occurred in the adjoining apartment. These include allegations that Defendants failed to investigate, detect or repair the methamphetamine release in the air vents or breeze-ways. Defendants' statement fails to address how the defense of supervening cause can be applied in circumstances where their alleged negligence is not an original act, but one which is secondary to the advent of the criminal activity.

¶ 15 Even in those alleged circumstances where Defendants' negligence arguably precedes the methamphetamine production, where for example Plaintiffs allege Defendants improperly screened prospective tenants, Defendants' statement does not present uncontroverted facts sufficient to address the three-prong test that shields an original actor from liability. There is simply not enough information in the "uncontroverted facts" offered to support a finding that the criminal activity of the adjoining tenants was an effective supervening cause that shields the Defendants from liability.

¶ 16 As a final argument, Defendants contend that Plaintiffs did not rely on any alleged misrepresentations made by the Defendants.[3] While reliance is an indispensable element of a misrepresentation or deceit claim, Defendants' statement of material facts falls far short of presenting facts that

---

**3.** Defendants stress that Plaintiffs moved from their apartment immediately after the police raid on the adjoining unit. A reading of Defendants' argument suggests that they take the position that Plaintiffs could not have relied upon any alleged statements made by the Defendants concerning the safety of their apartment, because they did not return to it after the statements were made. However, Plaintiffs' assertions regarding misrepresentations about the safety of the apartment were not confined to the aftermath of the police raid. Plaintiffs indicate in their pleadings that Defendants knew or should have known of the dangerous qualities of the ingredients emanating from the adjoining apartment and did nothing to warn tenants of those dangers. In

other words, Plaintiffs assert that Defendants failed to warn where they owed a duty to do so. *State, ex rel. Oklahoma Bar Ass'n v. Lloyd*, 1990 OK 14, 787 P.2d 855; *Phillips v. Ball*, 1960 OK 145, 358 P.2d 193, 197 (where one has a duty to speak, but remains silent, there may be constructive fraud); *Bean v. Harris*, 1923 OK 779, 93 Okla. 10, 219 P. 300 (when there is a duty to speak and the actor does not, it is equal to concealment); *Silk v. Phillips Petroleum Co.*, 1988 OK 93, 760 P.2d 174. In any event, a statement which offers only one undisputed fact on the issue of reliance, i.e. that Plaintiffs moved from their apartment immediately after the police raid, does not warrant the entry of adjudication on this issue.

would allow a court to rule on the issue as a matter of law. *State ex rel. Southwestern Bell Tel. Co. v. Brown*, 1974 OK 19, 519 P.2d 491, 495. The statement fails to address the nature of Plaintiffs' claimed misrepresentation, its timing and the reasons why Plaintiffs did not rely upon it. Defendants' "uncontroverted facts" do not support a conclusion as a matter of law that Plaintiffs did not rely upon Defendants' alleged misrepresentations.

¶ 17 Summary process provides a method of summarily terminating a case, or eliminating from trial some of its issues on the merits of a claim, where only questions of law remain. *Myers v. Lashley*, 2002 OK 14, 44 P.3d 553, 562. The summary judgment motion offered by Defendants in this case falls short of demonstrating that only questions of law remain to be decided in this case. The trial court erred when it entered summary judgment in favor of Defendants.

### IV. Court of Civil Appeals Decision

¶ 18 In reviewing a judgment entered through the summary process, "appellate tribunals must equally bear an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant." *Manley v. Brown*, 1999 OK 79, 989 P.2d 448, 455–456. This review is completely confined to the content of the trial court's summary judgment record. *Id.* An appellate court's determination of summary relief, like the trial court's, must be premised upon the record before the court and not materials that could be assembled later. *Hadnot*, 826 P.2d at 982 n. 10. An appellate court cannot take notice of any document or evidentiary material which the trial court did not have in deciding the summary judgment motion. *Manley v. Brown*, 989 P.2d at 457. In addition, it is not the duty of the appellate court on review to make first-instance determinations of disputed law or fact issues. *Bivins v. State of Oklahoma, ex rel. Oklahoma Memorial Hospital*, et al., 1996 OK 5, 917 P.2d 456, 464. An appellate court "cannot craft an initial decision upon an *untried question* and then direct that it be followed on remand." *Id.* (emphasis in original).

¶ 19 The Court of Civil Appeals upheld Defendants' summary judgment based upon its analysis that Plaintiffs did not support their claims of injury and failed to establish a sufficient link between exposure to methamphetamine or its components and their injuries. However, factual issues regarding the nature, cause and existence of Plaintiffs' injuries were not addressed by the motion for summary judgment or considered by the trial court below. The trial court simply did not examine whether Plaintiffs suffered injuries and whether they are the result of methamphetamine exposure. Therefore, the appellate court should not have engaged in such an examination in the first instance.

¶ 20 The Court of Civil Appeals opinion in essence affirmed the summary judgment on a theory not before the trial court. Accordingly, we must vacate the opinion. *See Bivins*, 917 P.2d 456.

### V. Conclusion

¶ 21 The trial court erred when it entered summary judgment in favor of Defendants. The summary judgment motion offered by Defendants in this case falls short of demonstrating that only questions of law remain to be decided in this case.

¶ 22 The Court of Civil Appeals erred when it examined matters outside the record and outside those considered by the trial court. Accordingly, the opinion of the Court of Civil Appeals is vacated.

¶ 23 CERTIORARI PREVIOUSLY GRANTED. OPINION OF THE COURT OF CIVIL APPEALS VACATED. JUDGMENT OF THE TRIAL COURT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

WATT, C.J., HODGES, LAVENDER, and KAUGER, JJ., CONCUR.

OPALA, V.C.J., concurs in part and dissents in part.

HARGRAVE, SUMMERS, WINCHESTER, JJ., dissent.