2010 OK 31

STATE of Oklahoma, ex rel. OKLAHOMA CORPORATION COMMISSION; State of Oklahoma, ex rel. Brooks Mitchell, Director of Administration of the Oklahoma Corporation Commission; State of Oklahoma, ex rel. Gary Walker, Director of the Oklahoma Petroleum Storage Tank Division; and State of Oklahoma, ex rel. Robyn Strickland, Administrator of The Oklahoma Petroleum Storage Tank Release Environmental Cleanup Indemnity Fund, Plaintiffs/Appellees,

v.

Joe McPHERSON; Gibble Oil Company; American National Bank; Marion & MGRT Guilliams; Don Pugh; Robert H. Meinders; Armstrong Transfer & STRG; Oraleah Bailey; Shephard Oil Company; Hogan Property; Penley Oil, Jeffrey Chappell; Amis Materials; Sakib Corporation; Charles Rex Mossler; David Nethery; Goddard Concrete; United Co–Op Corporation; Menz Oil Company; Lionel Distribution, Inc.; W & W Service Center; J & J Petroleum Company; Southwestern Bank & Trust; 74th & Penn Partners, Inc.; Vinh Van Cao; Mitzi Barnes; Leola Casey; Union Bank & Trust; Fred Jones Industries; Alco Door & Window; Noble County Schools; Bank One; Shamgar, Inc.; Brewer Construction; Ziad Al Fandi; Great Plains Financial, Inc.; Barney U. Brown Trust; Red Rock Distributing Co.; Red Rock Petroleum Co.; Save–A–Stop, Inc.; First United Bank; Ryder Truck Rental; S & F Investment; Robert W. Moore; Earnest & Eldean Tigue; Oklahoma City Airport Trust; James & Larettia Hale; Jim Davis Oil Company; American Sanitation, Inc.; Linda Johnstone; Gary Spencer; Gawey Enterprises; Donny Burns; Avis Rent–A–Car; Rayma K. Brewer; Del Paint Manufacturing; Cone Solvents; Oklahoma County; Jack Masters, Inc.; and J & J Express Lube, Inc., Defendants/Appellees,

v.

State of Oklahoma, ex rel. Rachel Lawrence Mor and Charles Wright, Intervenors/Appellants.

No. 104,337.

Supreme Court of Oklahoma.

April 6, 2010.

James R. Moore, Sue Wycoff, Moore & Vernier, P.C., Oklahoma City, OK, for Appellants.

Kieran D. Maye, Jr., Sarah M. Jernigan, Miller Dollarhide, Oklahoma City, OK, for Plaintiffs/Appellees.

Reid E. Robison, Amy D. White, McAfee & Taft, P.C., Oklahoma City, OK, for Appellee Ryder Truck Rental, Inc.

Leslie V. Batchelor, Center for Economic Development Law, Oklahoma City, OK, and William West, Special Assistant Municipal Counselor, Oklahoma City, OK, for Appellee Oklahoma City Airport Trust.

Shawn D. Fulkerson, Richard E. Parrish, Fulkerson & Fulkerson, P.C., Oklahoma City, OK, for Appellees Joe McPherson, et al.

EDMONDSON, C.J.

¶ 1 This case involves an attempt by *qui tam* taxpayers to intervene in a declaratory

judgment action which was brought by officials in response to their *qui tam* demand and notice. We hold that the order denying the motion to intervene was in error and reverse the order with instructions for further proceedings.

¶ 2 Several individuals and entities made claims against the Oklahoma Petroleum Storage Tank Release Environmental Cleanup Indemnity Fund. The Oklahoma Legislature created the Petroleum Storage Tank Release Indemnity Program in 1989. Oklahoma Statutes Title 17 §§ 350–358, inclusive.[1] The Indemnity Program included the Petroleum Storage Tank Release Environmental Cleanup Indemnity Fund (Indemnity Fund) to pay statutorily specified expenses related to rehabilitating sites polluted by petroleum from petroleum storage tank systems. 17 O.S. §§ 352(5), 353. The Oklahoma Corporation Commission has jurisdiction over the Petroleum Storage Tank Release Environmental Cleanup Indemnity Fund and Program. 17 O.S.2001 § 52.[2] The claims made against the Indemnity Fund by the Defendants herein totaled approximately $8,900,000.00. While the claims were pending the Commission settled the claims for payments in the amount of approximately $4,500,000.00, "inclusive of interest, administrative and litigation costs and attorney's fees, and any other costs associated with the preparation, filing and resolution of the subject disputes."

¶ 3 Intervenors (Taxpayers) gave the Oklahoma Corporation Commission (Commission) a *qui tam* notice and demand claiming that the Commission, through certain employees, made payments of public funds to individuals when those employees knew that such payments were not due and owing to those individuals. Taxpayers challenged the $4,500,000.00 payments agreed to by the Commission.

¶ 4 The Commission (and certain Commission employees) then filed a petition in the District Court and requested a declaratory judgment determining the payments to be valid, or in the alternative, a declaratory judgment determining the payments to be invalid and an order requiring the return of these payments to the Commission.

¶ 5 Taxpayers then sought to intervene in the District Court action. Taxpayers' allegations state that the Commission, through certain specified individuals, improperly agreed to pay 4.5 million dollars to a variety of contract consultants, petroleum tank owners, and two lawyers. They state that various employees of the Commission reviewed the claims for payment and denied the claims. However, different named Commission employees subsequently entered settlement agreements that approved the claims for payment. They also allege that the money was paid "for political purposes."

¶ 6 Taxpayers allege that examples of the impropriety of the settlement agreements and payments are shown by the involvement of Richard Sealy and two lawyers, Richard Parrish and Shawn Fulkerson. Taxpayers state that the payments to lawyers Parrish and Fulkerson were "rationalized as 'attorney fees' and 'litigation costs.'" Taxpayers then allege that these attorneys "did not prosecute any of these case [sic] in the Commission's administrative court and their clients have never been determined to be prevailing parties." Taxpayers challenge whether the Indemnity Fund may be used for attorney fees and litigation costs.

¶ 7 Taxpayers allege in the *qui tam* demand and notice that the Commission entered into settlement agreements with Richard Sealy, and "[a]t the time agency officials executed the agreements and began transferring the public funds, Sealy was charged with thirteen counts of offering false instruments to the State (specifically, to the Petroleum Storage Tank Division's Indemnification Fund), making fraudulent claims against the State and conspiring to defraud the State of Oklahoma." Taxpayers allege that "[a]t the time the agency officials began the transfer of public funds, the officials had complete knowledge of the charges and indictment against Sealy." Taxpayers allege that Sealy

---

1. 1989 Okla. Scss. Laws Ch. 90, §§ 18–27; 17 O.S.2001 §§ 350–358.

2. The recent amendment to 17 O.S. § 52 by 2009 Okla. Sess. Laws Ch. 429 § 7 did not change the language vesting jurisdiction with the Commission.

pled guilty to the charges against him and was convicted of crimes relating to fraudulent claims against the Indemnity Fund.

¶ 8 Taxpayers' motion and amended motion to intervene raise several issues. They include a more detailed explanation of the facts alleged in the *qui tam* notice and demand. The allegations include the explanation that Defendants' claims were initially processed and paid, or disallowed, or paid in part, or disallowed in part. They state that subsequent to this processing 17 O.S.Supp. 1998 § 356(O)[3] created a two-year period for Defendants to reassert claims which had not been paid in full. They allege that the Defendants' claims were refiled by lawyers Parrish and Fulkerson, and the then Administrator of the Indemnity Fund, David Kelley, determined that the claims were previously reviewed "and unless claimants had some new, not yet presented evidence to show that necessary and integral work had been performed and paid for, they would not be entitled to any further payment."

¶ 9 Taxpayers allege that no litigation on the claims occurred and then a Settlement Agreement was created and individual settlement agreements were made. Part of the settlement directed warrants to pay the amounts agreed upon to Cardinal Engineering, Inc. and Fulkerson and Fulkerson, P.C. An additional nine claims were allegedly assigned to Cimarron Environmental and Monitoring Services and the individual settlement agreements on those claims were signed by Richard Sealy. The motion to intervene states that at the time the agreements were executed Sealy had been charged with thirteen counts of filing false and fraudulent claims with the Petroleum Storage Tank Division of the Corporation Commission, the entity administering the Indemnity Fund. At this time Sealy had also been charged with one count of conspiracy to defraud the State of Oklahoma.

¶ 10 Taxpayers allege that nothing in the Settlement Agreement indicates that defendants knew their claims had been allegedly revived by § 356(O) and those claims had been settled, "or knew money had been paid to Cardinal Engineering and Fulkerson and Fulkerson on their claims." Taxpayers also allege that the Indemnity Fund is used to reimburse reasonable and allowable costs for cleanup after a petroleum release, that the Commission determined that no additional amounts were owed on Defendants' claims, and that payment was made from the Indemnity Fund without sufficient evidence that the payments were to reimburse for the corrective actions taken after petroleum release. Taxpayers state that the settlement agreement provides that it is "not to be construed as an admission of liability on the part of the Indemnity Fund, nor is this settlement to be construed as a determination that the costs for any past or pending claims on these sites were reasonable, necessary, customary or integral to the corrective action taken at the sites...."

¶ 11 The issues also involve the method of the Commission in prosecuting the suit. Taxpayers argued that the action was not being diligently prosecuted because of the Commission's six-month period of inaction after filing suit. They stated that all of the summonses were issued on the 180th day after the suit was filed and all were served by leaving them at the law office of Richard Parrish and Shawn Fulkerson; further, that Fulkerson is not the registered service agent for any of the Defendants and Parrish is the registered service agent for only one defendant, American Sanitation, Inc. Taxpayers argued that while Parrish had agreed to accept service for all of the Defendants, some of the Defendants were not aware that they had been sued. Taxpayers also questioned whether Defendants had knowledge of the claims filed on their behalf.

**3.** 1998 Okla. Sess. Laws Ch. 375, § 30 created paragraph "O" of § 356 which then stated the following.

"O. Claims for reimbursement pursuant to the Oklahoma Petroleum Storage Tank Release Indemnity Program must be made within two (2) years of the effective date of this act or two (2) years after site closure, whichever is later. Eligible persons should be encouraged to submits [sic] claims for reimbursement as the costs are incurred and in the order they are incurred. However, the right to submit a claim or the time during which to submit a claim for reimbursement shall not be limited or restricted except as provided in this subsection."

¶ 12 Another issue raised by Taxpayers is the allegation that the Commission will not act in good faith in litigating the issues herein because of the Commission's conduct in related litigation, *State ex rel. Wright v. Oklahoma Corporation Commission,* 2007 OK 73, 170 P.3d 1024. Taxpayers allege that *State ex rel. Wright* concerned a similar payment after settlement to ConocoPhilips and one of the Commissioners attempting to persuade the State Auditor and Inspector to retract an audit stating that the Commission had overpaid ConocoPhilips. They allege that in the ConocoPhilips litigation, after the Commission sought a declaratory judgment for judicial approval of the settlement, no discovery was made by the Commission against ConocoPhilips. In summary, they allege that the lack of a diligent prosecution is shown in *State ex rel. Wright* and such is evidence of the Commission's intention to be less than diligent in prosecuting the present case.

¶ 13 The Commission objected to the intervention by Taxpayers in the declaratory judgment action. The trial court determined that some Defendants had not been served or made a voluntary appearance, and decided that if the Commission did not procure service of process or voluntary appearance of the remaining Defendants then the Amended Motion to Intervene would be granted. O.R. Vol. II, 425. The trial court subsequently determined that all Defendants had received service of process and then denied the motion of Taxpayers to intervene in the declaratory judgment action. Taxpayers appealed.

¶ 14 In support of the trial court's order and in response to Taxpayers' arguments, the Commission and Defendants argue (1) that appellants fail to satisfy the requirements for intervention specified in the Pleading Code at 12 O.S. § 2024, (2) that the

Indemnity Fund does not contain funds belonging to the State of Oklahoma,[4] (3) that Taxpayers lack standing to intervene under 62 O.S. §§ 372–373, (4) that the Corporation Commission has diligently prosecuted their case and such action precludes intervention by Taxpayers, (5) that the *qui tam* demand is itself defective, (6) that Taxpayers lack an interest in the property which is the subject of the trial court action and they should not be allowed to intervene, (7) that the trial court action without participation of Taxpayers will not impair their ability to protect their interests, and (8) that Taxpayers' interests are adequately protected by the parties to the trial court action. The Commission and Defendants rely on *City of Oklahoma City v. Oklahoma City Urban Renewal Authority,* 1999 OK 71, 988 P.2d 901 (*Tal I*); *State ex rel. Moshe Tal v. City of Oklahoma City,* 2002 OK 97, 61 P.3d 234 (*Tal IV*); and *State for Use of Board of County Commissioners of Pontotoc County ex rel. Braly v. Ford,* 1941 OK 270, 189 Okla. 299, 116 P.2d 988.

¶ 15 In six recent opinions, the Court discussed a taxpayer's demand upon a public body, the public body's response thereto by filing a declaratory judgment action, a taxpayer's response by seeking to intervene in the declaratory judgment proceeding, and the taxpayer's subsequent *qui tam* proceeding filed as a separate action.[5] Therein, although the parties to the declaratory judgment proceeding agreed that the public contracts at issue were lawful, such agreement did not deprive the declaratory judgment proceeding of its justiciable character when the issues presented were not feigned or collusive by those seeking to uphold the public contracts. *State ex rel. Moshe Tal v. City of Oklahoma City,* 2002 OK 97, ¶ 8, 61 P.3d 234, 241 (*Tal IV*), citing *City of Okla-*

---

4. This argument was examined by the Court in *State ex rel. Wright v. Oklahoma Corporation Commission,* 2007 OK 73, 170 P.3d 1024, where the Court rejected this argument and held that the Petroleum Storage Tank Release Environmental Cleanup Indemnity Fund contained funds belonging the State.

5. *City of Oklahoma City v. Oklahoma City Urban Renewal Authority,* 1999 OK 71, 988 P.2d 901 (*Tal I*); *State ex rel. Moshe Tal v. Norick,* 1999

OK 85, 991 P.2d 999 (*Tal II*); *State ex rel. Moshe Tal. v. City of Oklahoma City,* 2000 OK 70, 19 P.3d 268, *cert. denied,* 534 U.S. 814, 122 S.Ct. 40, 151 L.Ed.2d 13 (2001) (*Tal III*); *State ex rel. Moshe Tal v. City of Oklahoma City,* 2002 OK 97, 61 P.3d 234 (*Tal IV*); *Oklahoma City Urban Renewal Authority v. City of Oklahoma City,* 2005 OK 2, 110 P.3d 550, 554 (*Tal V*); *State ex rel. Wright v. Oklahoma Corporation Commission,* 2007 OK 73, 170 P.3d 1024.

*homa City v. Oklahoma City Urban Renewal Authority,* 1999 OK 71, ¶ 29, 988 P.2d 901, 907 (*Tal I* ).

¶ 16 In the *Tal* cases we analyzed whether the officials had fairly presented the material facts and law to the trial court for adjudication. *Tal II,* 1999 OK 85, at ¶¶ 8–9, 991 P.2d at 1001; *Tal I,* 1999 OK 71, ¶¶ 17–22, 988 P.2d at 906. In *Tal IV* we noted that the *qui tam* taxpayers did not claim that the officials failed to raise a substantive issue arising from their written demand upon the officials. *Tal IV,* 2002 OK 97, ¶ 8, 61 P.3d 234. Officials need not plead unsupported factual conclusions made by the *qui tam* taxpayers. *Tal I,* 1999 OK 71, ¶ 18, 25–26, 988 P.2d at 906. A recurring issue in the *Tal* opinions is whether the officials were diligent in presenting the alleged illegal official acts in the declaratory judgment proceeding. In *State for Use of Board of County Commissioners of Pontotoc County ex rel. Braly v. Ford,* 1941 OK 270, 189 Okla. 299, 116 P.2d 988, we explained that the evidence before the trial court showed that the officials were diligent in prosecuting the action. *Id.,* 116 P.2d at 992. The *Tal* and *Braly* opinions show that one measure of the officials' diligence is whether they present the material facts to the trial court.

■ ¶ 17 Taxpayers argue that the Commission will not prosecute the declaratory judgment claim in good faith. The Commission's objection to the motion to intervene states that these allegations of Taxpayers are "rank speculation and conjecture" and insufficient to overcome the presumption that the action will be prosecuted in good faith. O.R. at 160. The Commission refers to the filing of the declaratory judgment action as evidence of its good faith.

¶ 18 It appears that the Commission does not measure its good faith diligence in prosecuting the action by whether it puts at issue facts alleged by Taxpayers. On appeal the Commission does not argue that any facts alleged by the taxpayers, or facts known by Taxpayers, will be submitted to the trial judge. The Commission's disdain of Taxpayers' version of the facts is facially apparent from the Commission's brief.

¶ 19 The Commission's brief on appeal states that the settlements were reached after mediation before "a highly respected Oklahoma City lawyer and mediator," and that the two taxpayer/appellants are "two disgruntled former attorneys for Plaintiffs/Appellees." The brief also states that the *qui tam* demand was an act "questioning the wisdom of the settlements." The Commission's brief refers to the denial of claims by taxpayer/appellants when they were Commission employees as part of "utter mismanagement" by them, and when a new Administrator chose to enter into a settlement agreement it benefitted the Indemnity Fund. The Commission's brief asserts that the settlements' provision for payment of attorney's fees and interest is based upon a statutory authorization, and that the claimants' attorney fees and interest had mounted due to Taxpayers' "ill-conceived legal tactics" when they were Commission employees. The Commission's brief asserts that Taxpayers have no factual basis for an allegation of fraud, and the brief supports this conclusion with a lengthy footnote supplying both alleged facts and legal argument. The Commission's brief attacks the legality of the *qui tam* letter. The Commission's brief states that Taxpayers "spend much of their brief attempting to shade the facts of the case." After taking issue with Taxpayers' attempt to "shade the facts" the Commission concludes that intervention by Taxpayers not necessary because the Commission can adequately represent Taxpayers' interests.

¶ 20 Taxpayers allege that statutes and regulations provide an administrative procedure with a hearing for a claimant to present evidence of reimbursable expenditures from the Indemnity Fund. Subsequent to learning that a Commission employee would require additional evidence from Defendants, it is contended, no such administrative hearing occurred; and, after a different employee became involved, a settlement procedure was employed where the evidence required for additional payments from the Indemnity Fund was not produced by Defendants or stipulated and admitted by the Commission as part of the settlement, after which payments of State funds were made in the absence of such required evidence. The allega-

tion is that officials of the Commission knew of this absence of evidence and thus allowed payment "on claims they knew were not due and owing with many of the claims unsupported by the documentation required under the Petroleum Storage Tank Statutes."

¶ 21 In essence, these allegations state that the settlement procedure was an artifice, supplanting the administrative procedure and evidentiary burdens by those involved. Taxpayers are not merely alleging that the Commission compromised and settled claims, but that it settled and agreed to pay resubmitted claims with knowledge that they had been rejected because of a lack of evidence showing that payment was proper. Taxpayers also allege that the Indemnity Fund was used to pay "attorney fees" and "litigation costs" in the absence of "litigation" as that term is defined by Taxpayers, and that such payments are therefore improper. They also allege that because payments were made to specific lawyers, those lawyers must be named as defendants in the declaratory judgment proceeding, and the Commission's failure to name them as defendants shows a lack of diligent prosecution.[6]

¶ 22 The declaratory judgment petition asks for relief in the alternative, either approving the settlement procedure and the payments made or requiring Defendants to repay to the Commission the payments made under the settlement agreements. It is certainly true that a party litigant may plead, and rely on at trial, alternative and inconsistent theories or defenses under the Oklahoma Pleading Code. *Cranford v. Bartlett,* 2001 OK 47, ¶ 12, 25 P.3d 918, 923; *Howell v. James,* 1991 OK 47, 818 P.2d 444. But the issue presented in this context is not whether inconsistent pleadings are procedurally allowed, but whether the Commission's pleadings and legal arguments show a lack of good faith in litigating the legality of the taxpayer-challenged payments.

¶ 23 Taxpayers' demand refers to the fraudulent claims of Sealy and his convictions. Are officials acting in good faith when they seek a declaratory judgment on the legality of payment of public funds when the person to whom payment was made was convicted of filing false and fraudulent claims? No authority need be cited for the proposition that a public official may not use the courts and the procedure of a declaratory judgment to obtain a judicial pronouncement that approves of payments made by that official on false and fraudulent claims. But we must stress that there is nothing in the record expressly stating that Sealy's settlements on behalf of Cimarron Environmental and Monitoring Services were fraudulent or that these claims relate to a named Defendant. On the other hand, there is no express allegation in a pleading or argument by the Commission stating that Sealy's claims are not part of the declaratory judgment action.

¶ 24 Taxpayers assert that Sealy's convictions, and knowledge of his criminal charges by Commission officials while settling claims with Sealy, show the Commission's willingness to settle claims against the Indemnity Fund without sufficient evidence to support payment of such claims. The declaratory judgment petition and objection to the motion to intervene make no statements to distinguish the fraudulent claims associated with Sealy, his settlements on behalf of Cimarron Environmental and Monitoring Services, and the settlements involving the particular Defendants in this proceeding.

¶ 25 The Commission's declaratory judgment petition states that claims made by the Written Demand of Taxpayers have raised certain questions which need resolution. Taxpayer's *qui tam* demand and notice was attached as an exhibit to the declaratory judgment petition. Notice pleading does not require pleading every fact upon which a claim is based, but merely a short and plain statement of the claim that will give fair notice of what the plaintiff's claim is and the

---

6. This Court does not make first-instance determinations of disputed issues of either law or fact in the exercise of its appellate jurisdiction. *State of Oklahoma v. Torres,* 2004 OK 12, ¶ 8, n. 15, 87 P.3d 572, 578; *Evers v. FSF Overlake Associates,* 2003 OK 53, ¶ 18, 77 P.3d 581, 587. Whether those specifically named to receive payments from the settlement agreements are required to be made parties to the declaratory judgment proceeding presents an issue that need not be decided in this appeal in advance of presentation of the issue to the trial court.

grounds upon which it rests. *Estate of Hicks ex rel. Summers v. Urban East, Inc.,* 2004 OK 36, ¶ 15, 92 P.3d 88, 92; *Delbrel v. Doenges Bros. Ford, Inc.,* 1996 OK 36, ¶ 3, 913 P.2d 1318, 1320. Satisfying the burden of diligent prosecution is not based merely upon satisfying a procedure; but diligence is also based, in part, upon a good-faith presentation of the material facts to the trial court. *Tal II,* 1999 OK 85, at ¶¶ 8–9, 991 P.2d at 1001; *Tal I,* 1999 OK 71, ¶¶ 17–22, 988 P.2d at 906. Similarly, we reject Taxpayers' argument that the Commission's use of a particular procedure, that is, using 180 days after filing the petition to attempt service, necessarily shows a lack of due diligence in prosecution.

■ ¶ 26 While a proper procedure must be used to present the material facts before the trial court, a justiciable controversy adjudicated in the form of a declaratory judgment action must be based upon the presence of antagonistic demands. *Lawrence v. Cleveland County Home Loan Authority,* 1981 OK 28, 626 P.2d 314, 315. Antagonistic demands *may* be initially pled via a petition with the qui tam notice and demand. However, we decline to adopt a standard that a petition with attached *qui tam* notice is sufficient as a matter of law to satisfy an official's burden to place material facts before the trial court. The record and appellate briefs clearly show that the Commission took a view of the facts relating to the settlements that is wholly contrary to that of Taxpayers. The objection of the Commission to the intervention was not based upon the Commission's attempts to use Taxpayers' alleged facts and legal arguments before the trial court.[7]

¶ 27 The Pleading Code makes timely intervention a matter of right[8] when there is either an unconditional statutory right to intervene; or when (1) the intervenor claims a

significant protectable interest relating to the property or transaction that is the subject of the action, (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest, and (3) the existing parties may not adequately represent the applicant's interest. *Brown v. Patel,* 2007 OK 16, ¶¶ 16–18, 157 P.3d 117, 123–124. The parties focus on the nature of the interest claimed by Taxpayers in this controversy.

¶ 28 In *State for Use of Board of County Commissioners of Pontotoc County ex rel. Braly v. Ford,* 1941 OK 270, 189 Okla. 299, 116 P.2d 988, we stated that when officials fail to take the proper actions after a taxpayer's statutorily sufficient written demand, a "taxpayer may institute a suit as provided by the statute and thereby acquire a substantial interest in the subject matter of the litigation." *Id.* 116 P.2d at 990. But because of the presumption that officials will take proper actions subsequent to a demand letter, the taxpayer's interest does not come into being until the taxpayer shows that officials failed to take the proper actions after receiving the demand letter. *Id.* 116 P.2d at 990–991. The *qui tam* interest of Taxpayers is thus limited to that created by the *qui tam* statute, and they must show in the pleading stage the insufficiency of the declaratory judgment petition as a condition precedent to a successful intervention on the basis of the pleadings. Taxpayers alleged facts not raised by the declaratory judgment petition with attached *qui tam* demand and this is in the nature of a challenge to the sufficiency of the declaratory judgment petition. But their more fundamental challenge to the good faith of the Commission is based upon allegations that the Commission employees settled and paid claims knowing that such claims had been previously denied as insufficient and that the Commission, without appropriate in-

---

7. For example, the Commission argued in its objection that the Indemnity Fund did not contain funds belonging to the State of Oklahoma, and thus challenged a basis of a *qui tam* action in this case.

8. Title 12, Section 2024, provides in part:
   A. INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action:

   1. When a statute confers an unconditional right to intervene; or
   2. When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest.

vestigation or proof for the claims, entered into settlements to pay such claims, including payment to a person who was then being charged with the crime of making false claims.

■■ ¶ 29 Taxpayers' motion for intervention distinguishes the *Tal* opinions with the allegation that *Tal* involved public contracts that were publicly debated, but "the Settlement Agreement deals were struck privately and secretly after prior [Commission] staff and administration at the Indemnity Fund had determined no more should be paid on the Defendants' claims." O.R. at 191. They also allege that the Commission's interests and approach to the litigation is at odds with that of the Taxpayers. We also note that allegations of wrongful conduct made by Taxpayers in their motion and amended motion to intervene are in the nature of supporting their allegations in the *qui tam* notice and these supporting allegations were not subsequently adopted or raised in any pleading by the Commission in support of an adjudication of the invalidity/validity of the settlement agreements and payments.[9] We conclude that the nature of Taxpayers' allegations and the opposition of the Commission to both alleged facts and law raised by Taxpayers are sufficient to show that Tax-

payers met their factual burden in the trial court[10] and the trial court's order denying the motion to intervene must be reversed. We need not formally adopt or reject a federal standard of review or parse issues of fact and law in this proceeding since we conclude that Taxpayers satisfied their burden to show facts sufficient to comply with § 2024 and the trial court's ruling is in error because it lacks legal support.[11]

■ ¶ 30 After completion of the appellate record and during the briefing cycle the Commission sought to supplement the record on appeal. The Commission states that it learned that one of the individuals who signed the *qui tam* letter did not sign the letter and that the *qui tam* letter has an insufficient number of taxpayer signatures. The Commission also alleges that one of the signatures was not properly notarized. The Commission seeks dismissal of the appeal on these grounds, and Defendants make a similar argument in their appellate brief. Taxpayers respond and state that the Commission's allegation as to the first individual is based upon a deposition and that the deposition transcript has not been provided to the individual taxpayer to read and make corrections. They also state that because they were denied intervention they were not pres-

---

9. After the motion to intervene was denied, the Commission filed its motion to enter the case on the non-jury trial docket and the trial court issued a scheduling order. This Court stayed the trial court proceedings pending the appeal and the scheduled trial did not occur.

10. In *Tal I* we stated that whether a taxpayer met the burden of showing a public body's failure to respond in good faith to a taxpayer demand is left to the sound discretion of the trial court. *Tal I*, 1999 OK 71, ¶ 17, 988 P.2d 901, 906. Intervention *of right* pursuant to § 2024(A) does not involve a discretionary act of the trial court. *Morton v. Baker*, 1938 OK 409, ¶ 4, 82 P.2d 998, 1000, quoting *Swift v. Black Panther Oil & Gas Co.*, 244 F. 20 (8th Cir.1917). *Permissive* intervention is left to the sound legal discretion of the trial court based upon the nature of the controversy and the facts and circumstances of each case. *Tulsa Rock Co. v. Williams*, 1982 OK 10, 640 P.2d 530, 532. We need not comment further on this statement in *Tal I* other than to note that it was not intended to govern the standard of review on appeal. See the discussion of standards of review at note 11 *infra*.

11. Our Pleading Code adopts a procedure for intervention based upon a federal counterpart.

*Brown v. Patel*, 2007 OK 16, ¶ 16, 157 P.3d 117, 123. Federal courts use an abuse-of-discretion standard when reviewing an order granting or denying permissive intervention. *Alameda Water & Sanitation District v. Browner*, 9 F.3d 88, 89–90 (10th Cir.1993) citing *Allen Calculators, Inc. v. National Cash Register Co.*, 322 U.S. 137, 142, 64 S.Ct. 905, 908, 88 L.Ed. 1188 (1944). One federal court has explained that appellate review of an order deciding intervention of right is reviewed *de novo* when a pure issue of law is presented, findings of fact are reviewed for clear error, and abuse-of-discretion review is used if the trial court's judicial discretion is involved. *Fund for Animals, Inc., v. Norton*, 322 F.3d 728, 731–732 (D.C.Cir.2003). See also *Utah Assn. of Counties v. Clinton*, 255 F.3d 1246, 1249–1250 (10th Cir.2001) ("We generally review a district court's ruling on the timeliness of a motion to intervene under an abuse of discretion standard.... When the court makes no findings regarding timeliness, however, we review this factor *de novo*.... We review *de novo* the court's rulings on the three remaining requirements of Rule 24(a)(2).").

ent at the deposition to "refresh" the taxpayer's memory as to which *qui tam* letters he signed. Taxpayers assert that the second individual verified his signature under oath during his deposition.

¶31 We deny the motion to supplement the record on appeal. The issue of the propriety of the *qui tam* demand and notice was not presented to the trial court for adjudication, and we decline to make a first instance determination of fact and law. *State of Oklahoma v. Torres,* 2004 OK 12, ¶8, n. 15, 87 P.3d 572, 578; *Evers v. FSF Overlake Associates,* 2003 OK 53, ¶18, 77 P.3d 581, 587. We accordingly deny the motion to dismiss the appeal without prejudice to the parties making their claims of fact and law on remand in the District Court concerning any alleged impropriety in the *qui tam* demand and notice. The motion of the Corporation Commission to file an additional brief is denied. The stay of trial court proceedings previously granted is dissolved upon issuance of mandate. The order denying the motion to intervene is reversed and the matter is remanded to the District Court for further proceedings consistent with this opinion.

¶32 ALL JUSTICES CONCUR.