2016 OK CIV APP 22

FIRST NATIONAL BANK IN MARLOW, Oklahoma, Plaintiff/Appellee,

v.

David W. BICKING and Tammy M. Bicking, Defendants/Appellants.

No. 113,741.

Court of Civil Appeals of Oklahoma, Division No. 2.

Dec. 30, 2015.

Jeffery K. Archer, Hammond, Archer & Kee, PLLC, Duncan, OK, for Plaintiff/Appellant.

Tyler C. Johnson, Legal Aid Services of Oklahoma, Inc., Lawton, OK, for Defendants/Appellants.

JERRY L. GOODMAN, Vice–Chief Judge.

¶1 In this foreclosure action, David W. Bicking and Tammy M. Bicking (Homeowners) appeal a February 17, 2015, order denying their motion for new trial seeking reconsideration of a December 9, 2014, journal entry which denied their motion for summary judgment and granted The First National Bank in Marlow, Oklahoma's (Bank) counter-motion for summary judgment. This appeal proceeds under Oklahoma Supreme Court Rule 1.36, 12 O.S.2011, ch. 15, app.1, without appellate briefing. After review of the record on appeal, we reverse the trial court's order denying reconsideration of the December 9, 2014, journal entry and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶2 On March 1, 2011, Homeowners executed a promissory note secured by a mortgage in favor of Bank with a principal amount of $47,516.00, at an interest rate of 8.380% per annum with a one (1) year repayment term. The promissory note had repayment terms of eleven (11) regular payments of $586.40 per month, and a final, irregular balloon payment of $44,939.28. Tammy Bicking signed her and her husband's, David Bicking, name on an amended note on March 20, 2012. The amended note extended the original loan for one (1) year with similar repayment terms and reduced the interest rate to 7.5%.

¶3 Homeowners defaulted on the loan and Bank filed suit to foreclose the note and mortgage on April 17, 2013. Homeowners answered, disputing the issue of default. Homeowners further filed a counterclaim, asserting violations of the Truth in Lending Act (TILA), the Homeownership and Equity Protection Act (HOEPA), the Oklahoma Consumer Credit Code (OCCC), the Oklahoma Consumer Protection Act (OCPA), as well as fraud.

¶4 On June 17, 2014, Homeowners filed a motion for summary judgment, asserting the note and mortgage were in violation of the TILA, HOEPA, that Bank failed to provide material disclosures as required by the TILA and the OCCC, and that Bank acted unethically and contrary to public policy. More specifically, Homeowners asserted Bank issued them a "high cost" mortgage loan that contained terms contrary to the substantive prohibitions contained in the HOEPA; that Bank failed to provide required disclosures under the TILA and the OCCC in a timely manner; and Bank's actions were unethical, contrary to public policy, and substantially injurious to consumers in violation of the OCPA.

¶5 Bank responded, generally asserting Homeowners' assertions were barred by the statute of repose proscribed by HOEPA, 15 U.S.C. §§ 1639, 1640(e). In addition, although Bank acknowledged that the initial mortgage loan was a "high cost" loan, it asserted the amended note's interest rate was in full compliance with federal and state law. Bank further maintained all required disclosures were timely given to Homeowners. Finally, Bank asserted Homeowners' loan was for a business purpose and therefore it was exempt from the requirements of the TILA. Bank also filed a coun-

ter-motion for summary judgment, seeking foreclosure and judgment on Homeowners' fraud counterclaim.

¶ 6 After additional briefing and a hearing before the trial court on November 12, 2014, the trial court denied Homeowners' motion for summary judgment, finding Homeowners' note was exempt under the TILA, HOEPA, OCCC, and OCPA because the primary purpose of the loan was for a business purpose. In the alternative, the court found the note, as amended in March of 2012, did not qualify as a "high cost" mortgage. Thus, the TILA, HOEPA, OCCC, and OCPA provisions were not triggered and Homeowners had no claims under these Acts. With respect to the fraud claim, the trial court found there was no basis in fact for a fraud claim. With regard to the foreclosure action, the trial court granted Bank's counter-motion for summary judgment, granting Bank a judgment against Homeowners in the amount of $45,086.03 with interest, expenses, and an attorney's fee.

¶ 7 On December 18, 2014, Homeowners filed a motion for new trial, asserting the trial court erred: 1) in finding the primary purpose of the mortgage loan was for a business purpose; 2) in finding the amended note was valid and binding on the parties; and 3) in finding, even if the amended note was valid, that the violations of the TILA and HOEPA were remedied by the amended note. By order filed on February 17, 2015, the trial court denied Homeowners' motion for new trial. Homeowners appeal.

## STANDARD OF REVIEW

■ ¶ 8 A motion to reconsider, if filed within ten (10) days of the order, is the functional equivalent of a motion for new trial. *Strubhart v. Perry Mem'l Hosp. Trust Auth.*, 1995 OK 10, ¶ 16, 903 P.2d 263, 269. A new trial may be granted for the reasons set out in 12 O.S.2011, § 651. The trial court's decision to deny a motion for new trial will not be disturbed absent an abuse of discretion. *Evers v. FSF Overlake Assoc.*, 2003 OK 53, ¶ 6, 77 P.3d 581, 585.

¶ 9 The propriety of the trial court's denial of the motion for new trial rests on the correctness of the court's grant of summary judgment. Therefore we must examine by *de novo* review the trial court's decision on summary judgment in order to determine whether the trial court abused its discretion in denying the motion for reconsideration. *Evers*, 2003 OK 53, at ¶ 6, 77 P.3d at 583. "Summary judgment is appropriate where it appears there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law." *City of Enid v. Public Employees Rel. Bd.*, 2006 OK 16, ¶ 5, 133 P.3d 281, 284–85; see also *Crockett v. McKenzie*, 1994 OK 3, ¶ 3, 867 P.2d 463, 464; *Daugherty v. Farmers Coop. Ass'n*, 1984 OK 72, ¶ 5, 689 P.2d 947, 949.

## ANALYSIS

### 1. Primary Purpose of the Loan

¶ 10 Homeowners contend the trial court erred in finding the primary purpose of Homeowners' loan was for business purposes and that the loan was therefore exempt under the TILA and OCCC.

■ ¶ 11 The TILA[1] and OCCC apply only to consumer credit transactions. The TILA does not apply to an extension of

---

1. In 1968, Congress enacted the TILA, a federal statute that governs the terms and conditions of consumer credit by, *inter alia*, requiring lenders to disclose certain details about loans and loan fees and costs. 15 U.S.C. § 1601 *et seq.* The purpose of the TILA "is to promote the 'informed use of credit' by consumers." *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981) (quoting 15 U.S.C. § 1601). Through its enactment of the TILA, Congress sought "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit[.]" 15 U.S.C. § 1601(a).

Congress enacted HOEPA in 1994 as an amendment to the TILA after abusive practices in home mortgage lending continued. *See* Pub.L. 103–325 (amending the TILA at 15 U.S.C. §§ 1601–02, 1604, 1610, 1639–41, 1648). HOEPA requires lenders to provide borrowers with additional disclosures with respect to certain home mortgages, including high cost loans. 15 U.S.C. § 1639(a)(1). To implement the TILA and HOEPA, the Board of Governors of the Federal Reserve System introduced Regulation Z. See 12 C.F.R. § 226.1 *et seq.*

credit "primarily for business, commercial, or agricultural purposes." 15 U.S.C. § 1603(1). Rather, the TILA's scope is limited to "consumer" credit transactions, which are defined as transactions in which "the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1602(h); 12 C.F.R. § 226.2(p). Similarly, the OCCC applies only when the "debt is incurred primarily for a personal, family or household purpose." 14A O.S.2011, § 3-104(b).

¶ 12 In determining whether a transaction is primarily consumer or commercial in nature for purposes of the TILA exemption, the trial court must examine the transaction as a whole and the purpose for which the credit was extended. *See Tower v. Moss,* 625 F.2d 1161, 1166 (5th Cir.1980) (home improvement transaction primarily for consumer purpose although home had been leased for nominal rent); *Gallegos v. Stokes,* 593 F.2d 372 (10th Cir.1979) (credit purchase of truck primarily for personal use where Plaintiff also intended to use it for business but did not have an on-going business nor the prospect of establishing one); *Semar v. Platte Valley Fed. Sav. & Loan Ass'n,* 791 F.2d 699, 704 fn. 11 (9th Cir.1986) (mortgage loan "primarily" for personal use if only 10% of proceeds used for business purposes and primary purpose of loan was to pay off a second trust deed loan on the consumer's house). Where credit is extended for both personal and business reasons, the mere fact that the transaction has *some* personal purpose does not automatically render it subject to the provisions of the TILA. *See Gombosi v. Carteret Mortgage Corp.,* 894 F.Supp. 176, 180 (E.D.Pa.1995). Rather, the court must determine whether the transaction is *primarily* for personal, family or household purposes. *Id.* A loan has a consumer purpose if the loan was "primarily for personal, family or household purposes." 15 U.S.C. § 1602(h). The plaintiff bears the burden of showing that a disputed transaction is "a consumer credit transaction, not a business

transaction." *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 751 (3d Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *Quinn v. A.I. Credit Corp.,* 615 F.Supp. at 151, 153 (E.D.Pa.1985).

¶ 13 In the present case, Homeowners assert they applied for credit secured by a mortgage on their primary residence. The proceeds of the loan were used to pay off an existing mortgage on their residence, the existing debt on their personal automobile, credit card debt, and to purchase a truck that was used mostly for business.[2] Homeowners contend less than one half of the loan proceeds were used to purchase the truck, *i.e.,* for a business purpose. Finally, Homeowners cite Bank's own records, a Disbursement Request, which provides the purpose of the loan was for "Personal, Family or Household Purposes or Personal Investment." Thus, Homeowners contend the purpose of the loan was primarily for personal purposes and the loan is therefore not exempted from the TILA and OCCC.

¶ 14 Bank disagrees, asserting Homeowners approached Bank to restructure their debt after being discharged from Chapter 7 bankruptcy and that the loan at issue was used to pay off their original home mortgage, two (2) motor vehicles, one of which was a business vehicle, and credit card debt. Finally, Bank asserts it characterized the note as an agricultural loan secured by farmland. Thus, Bank contends the primary purpose of the loan was business.

¶ 15 The trial court found the undisputed facts indicated that the primary purpose of the loan was business and therefore Homeowners had no claim under the Acts. We disagree. Homeowners have presented evidentiary material sufficient to tender a disputed issue of fact concerning the purpose of the loan and whether it was primarily for a personal or business purpose. A court may grant summary judgment only when neither genuine issues of material fact nor any con-

---

**2.** Homeowners assert they borrowed $47,516.00: $11,868.83 was paid on an existing mortgage, $10,834.95 on an existing vehicle, $3,871.95 in cash, and $16,660.57 to purchase a service vehi-

cle for a business and the remaining $4,279.70 in fees and closing costs. Thus, they contend 65% of the loan was for personal purposes.

flicting inferences that may be drawn from uncontested facts are in dispute and the law favors the moving party's claim or liability-defeating defense as a result of which the moving party becomes entitled to judgment as a matter of law. *Bowman v. Presley*, 2009 OK 48, ¶ 6, 212 P.3d 1210, 1216. No single, clear, and undisputed answer to this question can be drawn from the parties' evidentiary substitutes found in the record. Resolution of this uncertainty is a task that must fall upon the trier of fact. *Id.* at ¶ 15, at 1218. Accordingly, the trial court erred in denying Homeowners' motion for new trial, seeking reconsideration of ·the December 9, 2014, journal entry finding their loan was for a business purpose and as a result, the TILA, HOEPA, and OCCC did not apply. The matter is remanded to the trial court for further proceedings consistent with this opinion.

### 2. Amended Note and Violations of Acts

¶ 16 Homeowners further contend the trial court erred in finding the amended note cured Bank's violations of the Acts. Homeowners assert they were obligated and paid under the original note's terms for one (1) year and that violations under the Acts occurred under the original note notwithstanding a subsequent amendment of the note. Homeowners note the TILA provides a procedure for a lender to correct errors made that violate the disclosure requirements of the Act, citing 15 U.S.C. § 1640(b), and that Bank failed to follow these procedures.[3]

¶ 17 Bank disagrees, asserting the original note was extinguished and amended on March 20, 2012. Thus, the Act's provisions regarding "high cost" mortgages no longer apply. Alternatively, Bank asserts Homeowners received adequate disclosures prior to the time that the proceeds were disbursed and were advised that the mortgage covered their home and that they had the right to rescind the transaction. Finally, Bank contends any mistakes it made were the result of a bona fide error, thereby relieving it from any liability under the Act.[4]

¶ 18 The trial court found the note as amended in March of 2012 did not qualify as a "high cost" mortgage. Thus, the TILA, HOEPA, OCCC, and OCPA provisions were not triggered and Homeowners had no claim under these Acts. This was error. The original note was executed by Homeowners on March 1, 2011. Bank acknowledges the original note was a "high cost" mortgage and therefore subject to the provisions of the Acts. Homeowners have alleged various violations of the Acts, including Bank's failure to timely provide certain disclosures, the inclusion of a due-on-demand clause as well as a balloon payment, *inter alia*. These purported violations occurred prior to or simultaneous with the execution of the original note and were not extinguished or cured by the March 12, 2012, amendment of the note.

3. 15 U.S.C. § 1640 provides:

 (b) Correction of errors
 A creditor or assignee has no liability under this section or section 1607 of this title or section 1611 of this title for any failure to comply with any requirement imposed under this part or part E of this subchapter, if within sixty days after discovering an error, whether pursuant to a final written examination report or notice issued under section 1607(e)(1) of this title or through the creditor's or assignee's own procedures, and prior to the institution of an action under this section or the receipt of written notice of the error from the obligor, the creditor or assignee notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to assure that the person will not be required to pay an amount in excess of the charge actually disclosed, or the dollar equiva-

lent of the annual percentage rate actually disclosed, whichever is lower.

4. 15 U.S.C.A. § 1640 provides:
 (c) Unintentional violations; bona fide errors
 A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of ·procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programing, and printing errors, except that an error of legal judgment with respect to a person's obligations ·under this subchapter is not a bona fide error.

The trial court erred in holding otherwise. Accordingly, the trial court erred in denying Homeowners' motion for new trial, seeking to reconsider the December 9, 2014, journal entry finding the TILA, HOEPA, OCCC, and OCPA provisions were not triggered and Homeowners had no claim under these Acts. The matter is remanded to the trial court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

FISCHER, P.J., and WISEMAN, J., concur.