**B. C. RIST and Gladys E. Rist,
Plaintiffs in Error,**

v.

**WESTHOMA OIL COMPANY, a corporation,
Defendant in Error.**

**Ernest L. CARPENTER and Blanch M.
Carpenter, Plaintiffs in Error,**

v.

**PEERLESS OIL AND GAS COMPANY, Jake
L. Hamon and Westhoma Oil Company, Defendants in Error.**

**Nos. 40226, 40227.**

Supreme Court of Oklahoma.

May 21, 1963.

Rehearing Denied July 23, 1963.

Application for Leave to File Second Petition for Rehearing Denied Oct. 22, 1963.

Hemry & Hemry, Oklahoma City, Tryon, Sweet & Hensley, Guymon, Light & Yoxall, Liberal, Kan., Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., Hugo T. Wedell, Wichita, Kan., of counsel, for plaintiffs in error.

Cochran, Dudley, Fowler, Rucks, Baker & Jopling, Richard W. Fowler, Oklahoma City, Vincent Dale, Guymon, for defendants in error.

Grester H. LaMar, Guymon, amicus curiæ for Texas County Land and Royalty Ass'n.

Elmer W. Adams, George H. Bowen, Cecil R. Buckles, Tulsa, Cecil C. Cammack, Bartlesville, Angus A. Davidson, Glen R. Davis, Tulsa, John O. Dean, Robert E. Gill, Jr., J. Paul Greve, W. W. Heard, Tulsa, Joe M. Holliman, Tulsa, Mainard Kennerly, Oklahoma City, Hawley C. Kerr, Tulsa, Darwin M. Kirk, Wm. F. Latting, Tulsa, Gentry Lee, Bartlesville, Richard R. Linn, Oklahoma City, R. O. Mason, Bartlesville, Joseph W. Morris, G. W. Morrow, Wm. B. Nance, Tulsa, Gordon O. Oldham, O. L. Peck, Jr., Tulsa, William C. Phelps, Tulsa, Robert W. Richards, Oklahoma City, Nathan Scarritt, Enid, Warren M. Sparks, Tulsa, Norton Standeven, Oklahoma City, William M. Taylor, H. B. Watson, Jr., Tulsa, R. M. Williams, Bartlesville, John Wimbish, Philip R. Wimbish, Tulsa, Wm. J. Zeman, Bartlesville, amici curiæ.

BERRY, Justice.

These consolidated appeals are from separate judgments entered by the District Court of Texas County in actions brought by lessees to determine whether the oil and gas leases involved had terminated as to all horizons below sea level at the expiration of their respective primary terms because of failure to obtain production at this level. They present a common question of law bearing on similar and undisputed facts.

The parties, having stipulated to the facts, each moved for judgment (on the pleadings) and the lower court gave judgment for the plaintiffs (lessees) and against the defendants (lessors). The lessors have appealed.

Plaintiffs in error here will be identified hereinafter as lessors or by name, and defendants in error will be identified as lessees or by name.

The two leases involved here cover land located in Texas County in the Guymon-Hugoton gas field. They are identical in form, differing only as to one day in date, individual lessors and land descriptions. Each was for a ten-year primary term.

By mesne assignments, lessees, Westhoma Oil Co. et al., became the leasehold owners of all horizons below sea level in each tract and other lessees became the owners of the leasehold estate above sea level. No question is raised as to the validity of these assignments.

There has been no oil or gas production nor operation of any kind as to the horizons below sea level. Lessees, Westhoma et al., contended in the lower court that their leasehold interest in the below-sea level leaseholds were extended beyond the primary term by unit production obtained by separate lessees from horizons above sea level. The trial court entered judgment for these below-sea level lessees and quieted their title to the below-sea level leasehold.

 "Where a cause is submitted upon an agreed statement of facts it is the duty of this court on appeal to apply the law to such facts as a court of first instance and direct judgment accordingly." Whitten v. Kroeger, 183 Okl. 327, 82 P.2d 668; Odom v. Turner, Sheriff, 204 Okl. 370, 230 P.2d 487; Landy v. First National Bank & Trust Co. of Tulsa, 368 P.2d 987.

As we view the record, the respective claims of the parties involve, in the final analysis, the task of construing the terms of their written contract.

The lease contract provided, in so far as expiration and extension, as follows:
" * * *.

"2. This lease shall remain in force and effect for a term of ten (10) years from the date of its delivery (hereinafter sometimes called the 'primary term') and as long thereafter as oil, gas, or other minerals are or can be produced from any well on said premises and as long as hereinafter otherwise provided in the event of consolidation.

 * * * * * *

"9. Lessee is expressly granted the right and privilege (which lessee may exercise at any time either before or

after production has been obtained upon this premises or any premises consolidated herewith) to consolidate the leasehold estate, created by the execution and delivery of this lease, or any part or parts thereof, with the mineral leasehold estate or estates or parts thereof in any other lands upon which this lessee shall at the time own valid and subsisting lease or leases, located and situated near the property described herein, provided that any resulting consolidated estate shall not cover and include more than 2560 acres, * * * and it is agreed:

"(a) This lease shall thereafter continue in full force and effect for all purposes as to the premises covered hereby and included in any such consolidation of estates, so long as gas is or can be produced from any well located on any part of the land included in such consolidation (whether on lands covered hereby or not) except as herein otherwise provided, or so long as oil is or can be produced from any well drilled on a portion of the land covered hereby.

"(b) During the primary term hereof and until production has been obtained, from this or the consolidated leasehold, the lessee shall be privileged to pay the annual delay rentals stipulated herein on any part of this leasehold included in a consolidation of estates, or not so included, and thereby continue this lease in full force and effect as to the part or portions thereof upon which rentals are so paid, but this lease, insofar as it covers any tract or tracts not included in a consolidation of estates held in force by production as herein provided, shall terminate at the expiration of the primary term hereof, unless oil, gas, or other minerals is or can be produced from a well or wells thereon.

* * * * * *

"13. Not withstanding anything in this lease contained to the contrary, it is expressly agreed that if lessee shall commence drilling operations upon these premises or upon premises consolidated herewith at any time while this lease is in force, this lease shall remain in force and its term shall continue so long as such operations are prosecuted and, if production results therefrom, then as long as production continues."

The identical lease provisions involved in these appeals were considered in Rogers v. Westhoma Oil Co., 10th Cir., 291 F.2d 726, rehearing denied, 291 F.2d 732. In a divided opinion, the Federal Court reversed the trial court (U. S. District Court, Kansas) and held in effect that the lease contemplated both horizontal and vertical separations; that such was the intent of the parties; that such a separation of "parts" had been accomplished by lessees and that failure to explore the severed part below sea level within the primary term, effected or resulted in a termination of the lease as to the below-sea level leasehold and that unit production from the horizons above sea level did not operate in law to extend the lease as to below-sea level horizons.

The lessors urge this Court to adopt the reasoning and holding in the Rogers case, supra, and the lessees contend against it.

15 O.S.1961 § 152, provides:

"A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful."

■ Under this section a contract should be construed as to give effect to the intent of the parties if this can be done consistently with legal principles. Continental Supply Co. et al. v. Levy, 121 Okl. 132, 247 P. 967; also Kelso v. Kelso, 10 Cir., 225 F.2d 918.

15 O.S.1961 § 154 provides:

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."

We held in Kondos v. Stauffer, 180 Okl. 185, 69 P.2d 338, in Syllabus 2 that "The court must place itself, as far as possible, in the position of the parties when the contract was entered into, and consider the instrument itself as drawn, its purpose and the circumstances surrounding the transaction, and, from a consideration of all these elements, determine upon what sense or meaning of the terms used the minds of the contracting parties actually met."

It is urged by lessors, that the subject leases "are not standard form leases commonly used in this area" and that "they have been judicially described as unusual lease forms" and that they do not contain the usual "thereafter" clause; and that because of this the "Pugh" clause contained in Secs. 9(a) and 9(b) show a different intent of the parties than that usually expressed in customary leases. They admit that while such language gives rise to no problem in case of a subsequent vertical separation of the leased land into parts, they also urge that it contemplates and recognizes a partial consolidation of horizontal structures.

Our research on the "Pugh" clause has thrown little light on its origin, except it seems to have first appeared in 1941. When we consider the circumstances existing and surrounding the execution of the lease we must acknowledge the state of affairs in this country at the time this form of lease was promulgated and entered into. Both leases were executed in January, 1943. This country was then mobilized and at war. The exploration for oil and gas was under Federal supervision so as to conserve the Nation's warehouse of steel and other strategic materials. With this background in mind, we will consider the purpose in view and the meaning of the words used to determine the intention of the parties.

■ The question immediately arises: What leasehold estate was created by execution and delivery of this lease? Paragraph 1 provided "That lessors * * * in consideration of * * * one and no/100

Dollars, and of covenants and agreements hereinafter contained to be performed by lessees have this day granted and leased, * * * for the purpose of mining * * * and producing oil, gas and casinghead gas and gasoline * * * the following described property * * *." There can be no doubt then that the granting clause of the lease embraced the entire depth from the surface to the center of the earth since no terms limiting the lease as to depth or formation are employed. Such, of course, could have been done, and is not uncommon in the industry. We conclude from this, then, that no different intention of the parties is expressed in the granting clause than that clearly stated.

Unless there is something in the consolidation paragraphs or other paragraphs modifying this intent, it will control.

Paragraph 9 grants to lessees "the right to consolidate the leasehold created by the execution and delivery of this lease or any part or parts thereof * * *", and in the event of any such consolidation it is agreed: (a) "This lease shall thereafter continue * * * as to the premises covered * * * in any such consolidation * * * so long as gas is or can be produced from any well located on any part of the land included in any such consolidation * * *. (b) * * * but this lease, insofar as it covers any tract or tracts not included in a consolidation * * * shall terminate at the expiration of the primary term hereof * * *."

There is nowhere contained any language that purports to recognize or show intention that these terms are to apply or even recognize other than the customary application of vertical severance. Certainly the parties could have made reference to partial consolidation of separate horizontal structures by appropriate terms. But they say nothing as to depths, levels or strata.

■ The words "Tract or tracts", "Premises", "lands", and "leasehold estates" do not import to our minds other than their common meaning. See Crosbie v. National

Bank of Commerce, 86 Okl. 174, 207 P. 311. To us the contract terms are clear (Par. 9(b)) which require the payment of delay rentals by lessees as to part or portions. Can it be successfully maintained that this language makes provision for and anticipates different conditions of compliance as between lessees' assignors and lessors? We think not. The conduct of the parties indicates, and the briefs of lessors admit, that delay rentals paid by the owners of the above-sea level leasehold served to extend the lease year to year during the primary term as to all horizons. We are, therefore, unable to conclude that delay rentals on "parts" connotes an horizontal severance and that production from the upper stratum would not serve to extend the lease as to all strata.. This view is in accord with the reasoning in Kunc v. Harper-Turner Oil Co., Okl., 297 P.2d 371. Thus it seems clear to us that the parties entered into a lease agreement for a primary term of ten years with the term to be extended on production from the area described or from unit production of the area with no thought in mind of a severance as to horizontal divisions. This accords with Federal purpose to limit unrestrained development; with the plain terms of the lease and with common practice in the trade at the time.

To reach a different conclusion we would, in our view, be obliged to rewrite the contract and to change the obligations, rights and duties of the parties so that the lessors' rights were enlarged and the lessees' duties increased at the instant of the assignment of an interest in that part of the leasehold below sea level. See Gypsy Oil Co. v. Cover, 78 Okl. 158, 189 P. 540, 11 A.L.R. 129.

We have said before that "Courts will not make contract for parties, but will only effectuate purpose of contract actually made." Wagoner Oil & Gas Co. v. Marlow et al., 137 Okl. 116, 278 P. 294, and that "[t]he law will not make a better contract than the parties themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of another." Anthis v. Sullivan Oil & Gas Co., 83 Okl. 86, 203 P. 187. We said in Burns v. Woodson, Okl., 363 P.2d 233, affirming the rule of Plains Petroleum Corp. v. Fine, 174 Okl. 570, 51 P.2d 284, and Phelan et al. v. Roberts et al., 182 Okl. 202, 77 P.2d 9, that "Where the rights of parties to an action are clearly defined and established by law, equity has no power to change or unsettle such rights. The maxims of equity may be invoked to protect an existing right, but are unavailable to create a right where none exists. Equity follows the law."

The judgment of the trial court is free from errors. It is accordingly affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and WELCH, JOHNSON, WILLIAMS, and JACKSON, JJ., concur.

DAVISON and IRWIN, JJ., concur in result.