Benjamin P. MARTENS, Gerald S. Monahan, Patrick A. Monahan, Myrtle J. Blair Oliver, Gary Johnston, Blanche Jean Messenger, Robert Koehn, Lawrence Koehn, Claude Koehn, Martin Koehn, Mike Koehn, Leonard Koehn, Wilma (Nightengale) Ciskowski, Appellants,

v.

KAISER–FRANCIS OIL COMPANY, Appellee.

No. 69324.

Court of Appeals of Oklahoma, Division No. 3.

Jan. 17, 1989.

David E. Pepper, Timothy C. Haley, Oklahoma City, for appellants.

Keith F. Sellers, Ronda L. Davis, Tulsa, for appellee.

## MEMORANDUM OPINION

GARRETT, Presiding Judge:

Each of the Appellants (Plaintiffs below) own a mineral interest under various portions of Section 17, T20N, R12W, in Major County, Oklahoma. Each of them executed an oil and gas lease covering their respective mineral interest. Each owner's lease was a separate instrument, but the terms and conditions were the same except for differences in the names of the lessors and the legal descriptions of the land under which the minerals were located.

The leases were executed under date of May 1, 1956, and provided for a primary term of ten (10) years "and as long thereafter as oil, gas, casinghead gas, casinghead gasoline or any of the products covered by this lease is or can be produced." The 10–year "primary term" expired May 1, 1966. By various assignments, Kaiser–Francis Oil Company (Appellee herein and Defendant below) became the owner of these leases.

On September 24, 1957, the Oklahoma Corporation Commission (the Commission) entered its order designating Section 17 as a 640–acre drilling and spacing unit. On March 24, 1966, the N.C. Koehn # 1 well was drilled in the southeast quarter of Section 17 in the Unconformity Chester formation and is producing in paying quantities. Subsequently, the Commission entered another order as to all zones of production underlying Section 17, except the Unconformity Chester, and changed the drilling and spacing units from 640–acres to 160–acres. The Unconformity Chester remained as a 640–acre drilling and spacing unit. Appellee obtained permission from

the Commission to drill a second well to the Unconformity Chester formation in Section 17. However, this well, the Martens # 1–17, was actually completed in the Mississippi formation, which is a deeper formation than the Unconformity Chester formation. The Martens # 1–17 was drilled after May 1, 1966.

Appellants filed an action in the district court to cancel the leases as to the Mississippi formation. Appellee filed a motion for summary judgment in which it was alleged that the leases remained in force, by their own terms, because of production from the N.C. Koehn well. The trial court granted summary judgment in Appellee's favor, finding, in part:

None of the oil and gas leases contains any language limiting the lease to particular depths or formations. As such, each of the oil and gas leases appears on its face to cover all oil and gas underlying the described lands from the surface to the center of the earth. It is undisputed that oil and gas in paying quantities was discovered on the lands described in the oil and gas leases during the primary terms of those leases, and that such production has been continuous and in paying quantities ever since. Upon discovery of oil and gas in paying quantities during the primary term of the lease, the lessee became vested in all oil and gas underlying the leased premises without limitation as to formation or depth. Because production discovered during the primary term has been continuously in paying quantities, the term of the oil and gas lease has been extended and the lease is still in full force and effect without diminution or limitation.

Appellants contend: (A) since Appellee never attempted to develop the Mississippi formation during the primary term of the leases, its rights to that formation expired because there was no production before the primary term expired; and, (B) the leases expired as to all zones not developed within the primary term. Appellee's position is that the leases are still in force and effect as to all zones or formations within the unit because of the production from the initial well.

In the case of *Rist v. Westhoma Oil Company,* 385 P.2d 791 (Okl.1963), the Supreme Court considered oil and gas leases which did not contain any provision limiting them as to depth or formation. The Court pointed out that the parties could have included provisions making reference to "separate horizontal structures", but did not do so. At page 795, the Court stated:

There can be no doubt then that the granting clause of the lease embraced the entire depth from the surface to the center of the earth since no terms limiting the lease as to depth or formation are employed.

The leases in the instant appeal provide, in part:

That lessor ... has this day granted, leased and let and by these presents, does hereby grant, lease and let exclusively unto the lessee the hereinafter described *land,* and with the right to unitize this lease or any part thereof, with other oil and gas leases, as to all or any part of the *lands* covered thereby as hereinafter provided, for the purpose of carrying on geological, geophysical and other exploratory work, including core drilling, and the drilling, mining, and operating for, producing, and saving all of the oil, gas, casinghead gas, casinghead gasoline, and all other gases and their respective constituent vapors, ... for the economical operation of said *land,* alone or conjointly with neighboring *lands,* to produce, save, take care of and manufacture all of such substances....

.    .    .    .    .

If the leased premises are now or shall hereafter be owned in severalty or in separate tracts, the premises nevertheless shall be developed and operated as one lease,....

... Any well drilled on such unit shall be for all purposes a well under this lease and shall satisfy the rental provision of this lease as to all of the *land* covered thereby. Provided, however, lessee shall be under no obligation, express or implied, to drill more than one gas well on said Unit.

15 O.S. 1981 § 152 provides: "A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." The interpretation of a contract comes from the language used therein, if clear and explicit and if such interpretation would not be absurd. See 15 O.S. 1981 § 154. The leases in the instant case do not make reference to particular formations. The habendum clause of the leases provide for a primary term of "ten (10) years and as long thereafter as oil, gas, casinghead gas, casinghead gasoline or any of the products covered by this lease is or can be produced." Also, these leases, as in the lease in *Rist*, contain the words "lands", "premises" and "tracts" in describing the area to be produced. These words do not show an intention on the part of the contracting parties to provide for horizontal severance, which would thus deem the leases expired for the failure to develop every formation prior to the end of the primary term recited in the leases. We find that the parties intended that the leases could be unitized and that a producing well anywhere within the unit would be considered a well under these leases and, further, would satisfy the habendum clause of the leases. The parties could have used restrictive language as to particular formations. However, they did not, and we must assume such restrictions were not intended. We may not make a contract for the parties.

In *Layton v. Pan American Petroleum Corporation*, 383 P.2d 624 (Okl.1963), at pages 625-626, the Court said:

The facts thus reduce themselves to the simple query that where the land under an oil and gas lease, the primary term of which has expired, is located in a 640 acre gas spacing unit of the Corporation Commission, and a producing gas well has been brought in during the primary term of such lease upon another tract of land included in such 640 acre spacing order, is the term of such lease extended under the "thereafter" clause?

This is no longer an open question in this jurisdiction. In the case of *State ex rel. Commissioners of Land Office v. Carter Oil Company of West Virginia,* Okl., 336 P.2d 1086, this precise question was presented and answered. The second paragraph of the syllabus reads:

"By virtue of 52 O.S. 1951 § 87.1, subsection d the 'thereafter' clause and the legal effect of the pooling order of the Corporation Commission of Oklahoma combine to result in an extension of the primary term fixed in an oil and gas lease if the well on any portion of the pooled acreage satisfies the requirements of the clause."

Examination of the record, in view of the above and foregoing, reveals no dispute as to any material fact. The only issue involved was a question of law. The trial court correctly entered summary judgment in favor of Appellee.

AFFIRMED.

BAILEY, C.J., and REYNOLDS, J., concurs.