OSCN Found Document:OKLA. SCHOOLS RISK MANAGEMENT TRUST v. MCALESTER PUBLIC SCHOOLS

 

 
 

 
 OKLA. SCHOOLS RISK MANAGEMENT TRUST v. MCALESTER PUBLIC SCHOOLS
2019 OK 3
Case Number: 114553
Decided: 01/29/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 3, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

Â OKLAHOMA SCHOOLS RISK MANAGEMENT TRUST, Plaintiff/Appellee,
v.
MCALESTER PUBLIC SCHOOLS, Defendant/Appellant.

CERTIORARI TO THE OKLAHOMA COURT OF CIVIL APPEALS, DIVISION NO. IV

Â¶0 Plaintiff brought a declaratory judgment action in Oklahoma County which was subsequently transferred to the District Court of Pittsburg County. Plaintiff sought a declaration it was not liable for losses sustained by McAlester Public Schools resulting from a ruptured water pipe in one of its schools. McAlester Public Schools answered, alleged breach of contract by plaintiff, and sought indemnification for its losses. The Honorable Timothy Mills, Associate District Judge, granted summary judgment for Oklahoma Schools Risk Management Trust on its request for declaratory relief and against McAlester Public Schools on its indemnity claim. McAlester Public Schools appealed the judgment. The Oklahoma Court of Civil Appeals, Division IV, affirmed the District Court's judgment, and McAlester Public Schools sought certiorari in the Supreme Court. We hold exclusionary clauses in an insurance policy on the issue of man-made or caused events were ambiguous based upon (1) the lack of specificity in the particular clause when a similar specificity was used in other exclusionary clauses in the policy, and (2) the issue of man-made causation as applied to the particular exclusion had historically been treated by courts as ambiguous when man-made causation or a form of universal causation were not specified in the policy. We agree with McAlester Schools that OSRMT failed to show a policy-based exclusion to coverage for the event based upon earth movement and flow of water exclusions.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL
APPEALS VACATED; JUDGMENT OF THE DISTRICT COURT REVERSED; CAUSE REMANDED FOR FURTHER PROCEEDINGS 

John C. Lennon, D. Lynn Babb, Pierce Counch Hendrickson Baysinger & Green, L.L.P., Oklahoma City, Oklahoma for Plaintiff/Appellee.
Rex Travis, Oklahoma City, Oklahoma, for Defendant/Appellant.
Joe Ervin, Ervin & Ervin, McAlester, Oklahoma, for Defendant/Appellant.

EDMONDSON, J.
Â¶1 The controversy presented by the parties is whether an insurance policy covers the damage to a school caused by the rupture of a water pipe beneath the school. We agree with McAlester Public Schools that the policy covers the event.
Â¶2 The Oklahoma Schools Risk Management Trust is an interlocal cooperative composed of public schools and alternative education cooperatives for the purpose of pooling their property casualty risks by a member-funded self-insurance program. The Oklahoma Schools Risk Management Trust (OSRMT) issued a Plan of Coverage to McAlester Public Schools (McAlester Schools) for the period August 15, 2012 to August 15, 2013. On August 13, 2013 a water pipe underneath one of the McAlester Schools, Parker Middle School, broke causing damage to the school.
Â¶3 The OSRMT brought a declaratory judgment action in District Court and sought an adjudication holding the Plan of Coverage for McAlester Schools did not cover the damage from the broken water pipe. McAlester Schools answered and alleged counterclaims for declaratory judgment and a breach of contract by OSRMT, and for indemnification for losses resulting from the damage allegedly covered by the Plan of Coverage. McAlester Schools sought damages "in an amount in excess of $75,000.00."[1]
Â¶4 The OSRMT filed a motion for summary judgment on its declaratory judgment cause of action. OSRMT stated the loss suffered from earth movement, or water under the ground, or "wear and tear" was excluded by the parties' agreement. OSRMT argued these policy exclusions were unambiguous.
Â¶5 McAlester Schools filed a response to the OSRMT's motion combined with a cross-motion for summary judgment. The text of the motion states McAlester Schools is entitled to a summary judgment.
Â¶6 McAlester Schools' response stated a water supply line ruptured under the school and caused "the slab to heave under a jet of high pressure water." The response stated the rupture was a "sudden event," when the water flow was turned off to the school the slab subsided, and "there is no evidence or earth movement." McAlester Schools argued "there is no evidence of any earth movement (naturally occurring, or otherwise) was any cause of the damage." It also argued the earth movement exclusion did not apply because the damage was caused by "jetting water" and not natural earth movement.
Â¶7 McAlester Schools' also argued the policy's water exclusion language did not apply. The response argued the language in the policy did not address "the majority rule" where an exclusion clause for damage or loss resulting from water is understood as applied to naturally occurring water movement and not to water movement caused or resulting from the acts of people.
Â¶8 The OSRMT responded to McAlester Schools' cross-motion for summary judgment. It argued the temporal nature of the loss-creating event as either sudden or gradual has nothing to do with the coverage exclusions at issue. The OSRMT stated "there is indeed, evidence of "earth movement" as the term is used in the Plan of Coverage, and argued the earth movement exclusion "specifically includes within its ambit: '...the action of water under the ground surface.'" The OSRMT argued the earth movement exclusion clause contained an anti-concurrent causation clause, and must be read with other language indicating "the movement of earth caused by 'the action of water under the ground surface' is still movement of the earth."
Â¶9 McAlester Schools replied and argued the only issue is "whether the earth movement exclusion (and, to some extent, the water exclusion) apply when the cause of the 'movement' (or 'water') is man-made as opposed to naturally occurring."
Â¶10 The trial court granted OSRMT's motion for summary judgment. The trial court found "pursuant to the majority teachings of Broom, this Court finds the relevant portions of the plan of coverage are not ambiguous [and] therefore, Plaintiff's Motion for Summary Judgment is granted."[2] McAlester Schools' motion for summary judgment was denied. McAlester Schools appealed and then sought certiorari review in this Court after the Court of Civil Appeals affirmed the trial court's judgment.
I. Procedural Issue
Â¶11 We must first address what appears to have been decided by the trial court, what appears to have not been decided, and the effect on this Court's review of the summary judgment. OSRMT's motion for summary judgment argued for application of more than one exclusionary clause in the policy. The exclusionary clauses invoked were (1) "earth movement," (2) "water," including "water under the ground" and (3) "wear and tear" which included as a subcategory "rust or corrosion." Broom relied on Powell v. Liberty Mut. Fire Ins. Co.,[3] where a water pipe had broken, and we discussed the relationship of this event to an earth movement exclusion in an insurance policy.[4] Broom did not address movement of water, or wear and tear, or rust or corrosion as separate exclusions. We did not address what factors make, or do not make, ambiguous policy exclusions other than the particular earth movement exclusion that was before the court. The trial court's journal entry granting summary judgment and expressly relying on Broom appears to grant judgment solely on the earth movement exclusion.
Â¶12 The Court of Civil Appeals stated McAlester Schools' property loss was caused by two factors, water movement and earth movement, and that both were excluded risks in the policy. The appellate court determined "a discussion of the earth movement exclusion is unnecessary" because "attention must be given to the water exclusion provision of the policy." McAlester Schools sought certiorari and argued the earth movement exclusion rationale in Broom applied to a water movement exclusion. OSRMT responded on certiorari and argued the trial court correctly determined that the earth movement exclusion applied. OSRMT also argued the appellate court correctly concluded a water exclusion barred any recovery by McAlester Schools. OSRMT did not raise on certiorari the application of a wear and tear exclusion, or application of the rust or corrosion language which OSRMT did raise in the trial court.
Â¶13 Generally, an appellate court will not make first instance determinations of disputed law or fact issues, and will not affirm a summary judgment based upon facts and legal issues unadjudicated by the trial court when it granted summary judgment.[5] Although a decree in equity is affirmed if it is sustainable on any rational theory when the ultimate conclusion by the trial court is correct, a party's legal argument on appeal which is not supported with authority supplied by counsel will be deemed waived when a decree is reviewed on appeal.[6] Fundamental fairness cannot be afforded except within a framework of orderly procedure, and that fairness includes giving notice of certain judicial events altering legally cognizable rights.[7] If parties invoke a rule or principle of appellate procedure for an appellate court to determine an entire cause of action with its affirmative defenses and compulsory counterclaims on all of the theories raised before the trial court, then the parties must actually present those claims and theories to the appellate court in a judicially cognizable form with supporting authority where all opposing parties possess an opportunity to address them before the court. We decline to hold policy exclusions raised by OSRMT in the trial court are waived due to OSRMT failing to raise them on certiorari with supporting authority supplied by counsel.
Â¶14 When parties submit a case on agreed facts an appellate court may apply the law to those facts as a court of first instance and direct judgment.[8] However, this procedure is less than ideal for parties if (1) their causes of action were not presented for a complete and final adjudication before either the trial court or the appellate court due to a decision-making procedure used by the trial court or the actions by the parties, or (2) the parties' legal arguments before the trial court are truncated before the appellate court due to either appellate procedure or the actions by the parties. One approach taken herein appears to be that as long as parties agree on facts, but not necessarily consequences flowing from those facts, if a trial court grants a final judgment on one legal theory of recovery, then all legal theories raised in the trial court may be decided by the appellate court regardless of the supporting authority supplied on certiorari or on appeal. McAlester Schools' Answer and Counterclaim sought damages in excess of $75,000.00, and its motion for summary judgment in the trial court does not seek a judgment for any money damages, specific or otherwise. A motion for summary judgment is a motion for a judgment on the merits, and a judgment on a party's motion for summary judgment must be based upon the record in support for a judgment for that party's motion and not deficiencies in the opposing party's motion .[9] The petition in error and certiorari petition do not assign as error the trial court's denial of summary judgment to McAlester Schools. We need not reach the issue of the sufficiency of McAlester Schools' motion for judgment on breach of contract, indemnity, and declaratory judgment causes of action.[10] The issue of McAlester School's quest for summary judgment relief like OSRMT's claims for policy exclusion unresolved by our opinion herein must be decided by the trial court upon remand.[11]
Â¶15 Due to the nature of the trial court's decision and the arguments raised on certiorari with supporting authority supplied by the parties, we address on certiorari the earth movement exclusion and the flow of water exclusion in the policy.
II. Analysis
Â¶16 Generally, most property insurance is often classified as (1) An "all-risk" policy covering a loss when caused by any fortuitous peril not specifically excluded by the policy; or (2) A "named-perils" policy covering only losses suffered from a peril enumerated in the policy.[12] Once an insured under an all-risk policy shows the loss is a covered loss, then the insurer has a burden to show the loss is excluded by the policy.[13]
Â¶17 We first note the coverage issue discussed by the parties. OSRMT's motion for summary judgment referenced that part of the agreement identifying "covered property" where "property not covered" includes "underground pipes, flues, or drains."[14] McAlester Schools responded and stated: "The facts are not in dispute. An underground main line water pipe beneath Parker Middle School burst, due to rust or corrosion on the outside of the buried pipe."[15] McAlester Schools recognized a cause of the damage was the rupture of an underground pipe. Concerning the "Covered Property" provision of the agreement, McAlester Schools also stated: "This provision clearly excludes reimbursement for the cost to replace property not covered -- here the pipe itself."[16] OSRMT states that "all are in agreement that the underground pipe itself is not covered and there is no indemnity obligation for the pipe." Further: "'underground pipes, flues or drains' are explicitly defined out of the term 'Covered Property' in the Plan of Coverage."[17] McAlester Schools' Cross-Motion for Summary Judgment did not seek reimbursement for the underground pipe: "Further, though the underground pipe itself may not be covered by the Plan of Coverage, nothing in the contract prevents coverage to other items damaged by the pipe's failure."[18]
Â¶18 The parties also discuss the nature of the agreement. McAlester Schools states the agreement is an "all-risks policy."[19] OSRMT states that it is "undisputed that this coverage structure is colloquially referred to by many as an 'All-Risks' form, although the Plan of Coverage never uses this term."[20] OSRMT states although the Plan of Coverage has the nature of all-risks nature, such characterization has no impact on the controversy.[21] Once McAlester Schools' under an all-risk policy shows loss is a covered loss, then OSRMT has a burden to show the loss is excluded by the policy.[22] OSRMT has the burden to show the loss to covered property is excluded by the policy.
Â¶19 OSRMT argues the exclusions in the agreement apply to both naturally occurring and man-made phenomena. McAlester Schools argue the exclusions apply to only naturally occurring events and not the man-made ruptured water pipe. In Broom v. Wilson Paving & Excavating, Inc., we stated the following.
Earth movement exclusions in insurance policies "generally refer to and have historically related to catastrophic and extraordinary calamities such as earthquakes and landslides." Peters Twp. Sch. Dist. v. Hartford Accident and Indem. Co., 833 F.2d 32, 35 (3d Cir.1987). Such exclusionary provisions were included in insurance policies to protect insurance companies from having to pay out on policies when catastrophic events, such as earthquakes or floods, caused damage to numerous policyholders. Powell v. Liberty Mut. Fire Ins. Co., 127 Nev. 156, 252 P.3d 668, 672--673 (2011). "[T]he reason for the insertion of the exclusionary clause ... in all risk insurance policies is to relieve the insurer from occasional major disasters which are almost impossible to predict and thus to insure against." Wyatt v. Nw. Mut. Ins. Co., 304 F.Supp. 781, 783 (D.Minn.1969). Broom, 2015 OK 19, Â¶ 33, 356 P.3d at 629.
We observed that other jurisdictions have found similar earth movement exclusions ambiguous when they typically list naturally occurring events describing earth movement but do not include unnatural events as well.[23]
Â¶20 We noted that in Powell v. Liberty Mut. Fire Ins. Co., supra, a water pipe exploded in the Plaintiff's house, flooding the basement and causing a shift in the foundation and extensive cracking and separation in the walls and ceiling.[24] The insurance company denied coverage under the earth movement exclusion, which excluded coverage for "[e]arth movement, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide, mine subsidence; mudflow; earth sinking, rising or shifting."[25] The Nevada court reversed summary judgment in favor of the insurance company, finding that because the policy "does not include clear and unambiguous language, subject to only one interpretation, that clearly excludes the damage here, [the insurance company] is unable to deny coverage of the claim if the district court determines that the claim stems from damage caused by soil movement as a direct result of the ruptured pipe."[26]
Â¶21 OSRMT asks the Court to read the agreement [or policy] as a whole and view the exclusions as referring to both naturally occurring and man-made events, which according to the OSRMT distinguish the present controversy from our opinion in Broom v. Wilson Paving & Excavating, Inc., supra. The language relied on by OSRMT to show the loss was excluded states the following.
B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

a. Ordinance Or Law . . .
b. Earth Movement

(1) Earthquake, including any earth sinking, rising or shifting related to such event;
(2) Landslide, including any earth sinking, rising or shifting related to such event;
(3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;
(4) Earth sinking (other than sinkhole collapse), rising or shift including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.
But if earth movement, as described in b.(1) through (4) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

(5) Volcanic eruption, explosion or effusion. . . . .
c. Governmental Action
Seizure or destruction of property by order of governmental authority. . . .
d. Nuclear Hazard
Nuclear reaction or radiation, or radioactive contamination, however caused, . . .
e. Utility Services
The failure of power, communication, water or other utility service supplied to the described premises, however caused, . . .
f. War And Military Action
War, including undeclared or civil war . . .
g. Water
(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
(2) Mudslide or mudflow;
(3) Water that backs up or overflows from a sewer, drain, or sump; or
(4) Water under the ground surface pressing on, or flowing or seeping through;
(a) Foundations, walls, floors or paved surfaces;
(b) Basements, whether paved or not; or
(c) Doors, windows or other openings.
But if water, as described in g.(1) through g.(4) above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.
h. Fungus, Wet Rot Dry Rot And Bacteria . . .
2. We will not pay for loss or damage caused by or resulting from any of the following:
a. Artificially generated electrical, magnetic or electromagnetic energy that damages , disturbs, disrupts, or otherwise interferes with any [electrical systems, devices, appliances, etc.] . . .
b. Delay, loss of use or loss of market.
c. Smoke, vapor or gas from agricultural smugding nor industrial operations
d. (1) Wear and tear;
(2) Rust or corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
(3) Smog;
(4) Settling, cracking, shrinking or expansion;
(5) Nesting or infestation, or discharge or release of waste products or secretions by insects, birds, rodents or other animals.
(6) Mechanical Breakdown, including rupture or bursting caused by centrifugal force. . . .
(7) The following causes of loss to personal property: (a) Dampness or dryness of atmosphere;
(b) Changes in extremes of temperature; or
(c) Marring or scratching. . . .
e. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. . . .
f. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.
OSRMT argues the language in the agreement stating "underground pipes, flues or drains" are not covered property should be read together with the exclusionary clause language, and when so read shows that the exclusions are not ambiguous when referring to "water under the ground surface pressing on, or flowing or seeping through," and "settling, cracking, shrinking or expansion," and "earth sinking (other than sinkhole collapse), rising or shift including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty [and] . . . and the action of water under the ground surface." OSRMT states the exclusions in the agreement include both naturally occurring and man-made events. Further, it states "What is at issue here is the applicability of unambiguous coverage exclusionary language."
Â¶22 The parties' agreement is read as a whole giving the language its ordinary and plain meaning to carry out the parties' intentions.[27] If the language used in an insurance policy is susceptible to two interpretations from the standpoint of a reasonably prudent layperson, then the language is ambiguous.[28] The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law.[29]
Â¶23 In the policy before us, "earth movement" is referenced to "earthquake," landslide," "mine subsidence," and "earth sinking," all similar to the language noted in Powell v. Liberty Mut. Fire Ins. Co., supra, which was held to be ambiguous as to the event of a ruptured pipe. In Broom we noted the ambiguous nature of an earth movement exclusion in a policy as applied to a man-made event when earth movement exclusions are referenced in a policy to naturally occurring events. It is not a complete failure to reference man-made events in the policy which created the ambiguity in Broom, but the failure to expressly state man-made events are included in the earth movement exclusion.
Â¶24 We uphold "clear and unambiguous" exclusionary clauses when shown by an insurer, but a lack of specificity in the language may make an exclusion ambiguous when applied to a particular event.[30] This lack of specificity as to an event that is man-made or caused as such relates to earth movement is an issue in this controversy. The earth movement refers to mine subsidence but not expressly to ruptured water pipes. We note that other exclusions in the agreement use language attempting to include events regardless of the identified cause, e.g., "nuclear reaction or radiation, or radioactive contamination, however caused," and "failure of power, communication, water or other utility service supplied to the described premises, however caused." A layperson reading these exclusionary clauses would understand a universal causation is specified in some but not all of the exclusions, with language of universal causation being intentionally omitted from the earth movement exclusion. Generally, when an insurer creates specificity in one clause of a policy and then omits it in a similar context, the omission is considered purposeful and should be given meaning.[31] OSRMT's omission of language referencing universal causation occurs in an exclusionary clause which has historically been understood as referring to naturally caused events.
Â¶25 The "water exclusion" clause references water under the ground surface pressing on, or flowing or seeping through foundations, walls, floors or paved surfaces; or basements, whether paved or not; or doors, windows or other openings. Like the earth movement exclusion, the language is not specific as to natural causes, man-made causes, or to use the language found elsewhere in the policy, "however caused." Similar to the earth movement exclusion, some courts have determined a water movement exclusion applies to flow based upon natural causes when the policy is ambiguous.[32]
Â¶26 OSRMT states the policy should be read as a whole and an underground water pipe is not covered property and damages caused from the rupture of a non-covered property should be excluded pursuant to the exclusionary clause. Reading the policy as a whole does not allow us to conflate the policy-defined category of what is covered property with the exclusion. The policy-defined event defining an exclusion is based upon the type or nature of the event and in this agreement the exclusion is not defined based upon, or with reference to, the description of the non-covered property. This Court will not undertake to rewrite the insurance agreement or make for either party a better contract than the one which was executed.[33]
Â¶27 We hold exclusionary clauses in an insurance policy on the issue of man-made or caused events were ambiguous based upon (1) the lack of specificity in the particular clause when a similar specificity was used in other exclusionary clauses in the policy, and (2) the issue of man-made causation as applied to the particular exclusion had historically been treated by courts as ambiguous when man-made causation or a form of universal causation were not specified in the policy. We agree with McAlester Schools that OSRMT failed to show a policy-based exclusion to coverage for the event based upon earth movement and flow of water exclusions.
III. Conclusion
Â¶28 The standard for appellate review of a summary judgment is de novo and an appellate court makes an independent and nondeferential review testing the legal sufficiency of the evidential materials used in support and against the motion for summary judgment.[34] The summary judgment for Oklahoma Schools Risk Management Trust is reversed and the controversy is remanded to the District Court for additional proceedings consistent with this opinion.
Â¶29 GURICH, C.J.; EDMONDSON, COLBERT, REIF, and DARBY, JJ., concur.
Â¶30 WYRICK, V.C.J. (by separate writing); KAUGER, WINCHESTER, and COMBS, JJ., dissent.

FOOTNOTES

[1] Record on Accelerated Appeal, Tab 8, Defendant's [McAlester Schools'] Answer and Counterclaims, prayer for relief, p. 6.

[2] Journal Entry of Judgment referencing Broom v. Wilson Paving & Excavating, Inc., 2015 OK 19, 356 P.3d 617.

[3] 127 Nev. 156, 252 P.3d 668 (2011).

[4] Broom, 2015 OK 19, Â¶ 38, 356 P.3d at 631.

[5] Evers v. FSF Overlake Associates, 2003 OK 53, Â¶Â¶ 18-19, 77 P.3d 581, 587.

[6] Matter of Estate of Vose, 2017 OK 3, n. 1 & Â¶ 10, 390 P.3d 238, 242.
Due to our disposition of the procedural issue we need not determine the underlying nature of the declaratory judgment action which became merged into the judgment which was appealed. Cf. Osage Nation v. Board of Commissioners of Osage County, 2017 OK 34, Â¶ 55, 394 P.3d 1224, 1243 (declaratory judgment is neither strictly legal nor equitable and assumes the character of the nature of the controversy).

[7] Andrew v. Depani-Sparkes, 2017 OK 42, Â¶ 38, 396 P.3d 210, 224.

[8] Rist v. Westhoma Oil Co., 1963 OK 126, 385 P.2d 791, 792; Landy v. First National Bank & Trust Co. of Tulsa, 1962 OK 12, 368 P.2d 987, 989.

[9] Osage Nation v. Board of Commissioners of Osage County, 2017 OK 34, n. 87, 394 P.3d 1224, 1246 (an adjudication in the form of summary judgment is on the merits of a controversy); Spirgis v. Circle K Stores, Inc., 1987 OK CIV APP 45, 743 P.2d 682 (approved for publication by Supreme Court) (motion for summary judgment must be based upon the record in support for a judgment on the merits for that motion). See, e.g., Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007) (cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another) quoting Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979).

[10] This appeal was prosecuted pursuant to Rule 1.36 which provides for the trial court filings to serve as the appellate briefs and the assignments of error on appeal are those listed in an appellant's petition in error which are supported by argument and authority. Gaasch Estate of Gaasch v. St. Paul Fire and Marine Insurance Company, 2018 OK 12, n. 4, 412 P.3d 1151. See also Matter of Termination of Parental Rights, 1993 OK 10, 847 P.2d 768, 770 (review of an opinion by the Court of Appeals is limited to those issues before us on certiorari).

[11] Parker v. Elam, 1992 OK 32, 829 P.2d 677, 682 (a judgment, reversed and remanded, stands as if no trial has been held on remand from a reversed judgment; and the parties are entitled to introduce additional evidence, supplement the pleadings, expand issues, unless expressly or specifically limited by the appellate proceedings in error).

[12] Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 41 (2d Cir. 2006); Opera Boats, Inc. v. La Reunion Francaise, 893 F.2d 103, 105 (5th Cir.1990).

[13] Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp., 579 F.2d 561, 564 (10th Cir. 1978); Garvey v. State Farm Fire & Casualty Co., 48 Cal. 3d 395, 257 Cal. Rptr. 292, 770 P.2d 704, 711 (1989); North American Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc., 413 F.Supp.2d 295, 300-301 (S.D.N.Y. 2006).

[14] Plaintiff's [OSRMT's] Motion for Summary Judgment, p. 3.

[15] Defendant's [McAlester Public Schools'] Response to Motion for Summary Judgment and Cross-Motion for Summary Judgment, at p. 5.

[16] Defendant's [McAlester Public Schools'] Response to Motion for Summary Judgment and Cross-Motion for Summary Judgment, at p. 16.

[17] Plaintiff's [OSRMT's] Response to Defendant's Cross-Motion for Summary Judgment, at pp. 2-3.

[18] Defendant's [McAlester Public Schools'] Response to Motion for Summary Judgment and Cross-Motion for Summary Judgment, at p. 17.

[19] Defendant's [McAlester Public Schools'] Response to Motion for Summary Judgment and Cross-Motion for Summary Judgment, at pp. 2, 4.

[20] Plaintiff's [OSRMT's] Response to Defednant's Cross-Motion for Summary Judgment, at p. 2.

[21] Plaintiff's [OSRMT's] Response to Defednant's Cross-Motion for Summary Judgment, at p. 2.

[22] See authority cited in note 13, supra.

[23] Broom, 2015 OK 19, Â¶ 38, 356 P.3d at 631.

[24] Broom, 2015 OK 19, Â¶ 38, 356 P.3d at 631.

[25] Broom, 2015 OK 19, Â¶ 38, 356 P.3d at 631, quoting Powell v. Liberty Mut. Fire Ins. Co., 252 P.3d at 670.

[26] Broom, 2015 OK 19, Â¶ 38, 356 P.3d at 631, quoting Powell v. Liberty Mut. Fire Ins. Co., 252 P.3d at 674.

[27] BP America, Inc. v. State Auto Property and Casualty Ins. Co., 2005 OK 65, Â¶ 6, 148 P.3d 832, 835.

[28] Haworth v. Jantzen, 2006 OK 35, Â¶ 13, 172 P.3d 193, 196. See also Hensley v. State Farm Fire and Casualty Company, 2017 OK 57, Â¶ 36, 398 P.3d 11, 23 (a patent ambiguity is that which appears on the face of the instrument, and arises from the defective, obscure, or insensible language used).

[29] Max True Plastering Co. v. U.S.F. & G. Co., 1996 OK 28, 912 P.2d 861, 869.

[30] BP America, Inc. v. State Auto Property and Casualty Ins. Co., 2005 OK 65, Â¶ 11, 148 P.3d 832, 838 (insurer showing a clear and unambiguous exclusion clause will be judicially enforced); Zurich American Insurance Company v. ACE American Insurance Company, 165 A.D.3d 558, 86 N.Y.S.3d 468, 469 (2018) citing Neuwirth v. Blue Cross & Blue Shield of Greater N.Y., Blue Cross Assn., 62 N.Y.2d 718, 719, 476 N.Y.S.2d 814, 465 N.E.2d 353 (1984) (the burden of establishing that a claim falls within a policy's exclusionary provisions rests with the insurer); Clark v. Prudential Property and Cas. Ins. Co., 138 Idaho 538, 541, 66 P.3d 242, 245 (2003), (burden is on the insurer to use clear and precise language if it wishes to restrict the scope of coverage and exclusions not stated with specificity will not be presumed or inferred).

[31] See, e.g., O'Connell v. Liberty Mutual Fire Ins. Co., 43 F.Supp.3d 1093, n. 3, 1097 (D. Mont. 2014) (it is a general rule of contract interpretation that if a contract includes a level of specificity in one context and then omits that specificity in a similar context, such an omission is purposeful and should be given meaning); Dixon v. State Mut. Ins. Co., 1912 OK 594, 126 P. 794 (maxim expressio unius est exclusio alterius, mention of one thing implies exclusion of another, is applied to construction of insurance policy).

[32] See, e.g., Cantanucci v. Reliance Ins. Co., 43 A.D.2d 622, 349 N.Y.S.2d 187, 190-191 (1973) (by construing the exclusion to apply only to water below the surface due to natural causes, effect is given to the well-settled principle that provisions of an insurance policy are to be harmonized and that ambiguities must be resolved in favor of the insured).

[33] Hensley v. State Farm Fire and Casualty Company, 2017 OK 57, Â¶ 32, 398 P.3d 11, 22.

[34] Boyle v. ASAP Energy, Inc., 2017 OK 82, Â¶ 7, 408 P.3d 183, 187-188; Nelson v. Enid Medical Associates, 2016 OK 69, 376 P.3d 212, 216.

Wyrick, V.C.J., with whom Winchester, J., joins, dissenting:
Â¶1 This case is about whether an insurance contract covers a particular incident--not whether the contract ought to cover it, but whether it actually does. In my view, it doesn't. So I respectfully dissent.
Â¶2 The event at issue is damage to a school that was caused when a water main buried under the school ruptured, causing water to be released at high pressure. That water pressed up against the ground under the foundation of the school and extensively damaged the school's foundation and walls.
Â¶3 The insurance policy at issue excludes from coverage "loss or damage caused directly or indirectly by . . . [w]ater under the ground surface pressing on, or flowing or seeping through . . . [f]oundations, walls, floors, or paved surfaces."[1] This is so "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."[2]
Â¶4 The plain text of the contract thus excludes from coverage the event that damaged the school. The only way around this is to declare that the exclusion is ambiguous; so that is what the majority does. While it gives scant attention to the water exclusion--focusing instead almost entirely on the earth-movement exception--the majority quite conclusorily states that "some courts have determined a water movement exclusion applies to flow based upon natural causes when the policy is ambiguous."[3] But what about the exclusion is ambiguous? As best I can tell, the majority is lumping the water exclusion in with the earth-movement exclusion and concluding that the exclusion is ambiguous because it does not specify whether it applies to only natural events or both natural and man-made events.
Â¶5 But lack of specificity doesn't signal ambiguity; it signals breadth. A mother who tells her child to eat his vegetables isn't likely to be sympathetic when the child eats his carrots but leaves his broccoli untouched because "Mom, you didn't say that I had to eat my carrots and my broccoli." This is so because we understand a term to include everything that naturally falls within the term's plain meaning, unless otherwise specified or unless context dictates otherwise. Even if that weren't so, the water exclusion's statement that it applies "regardless of any other cause" strengthens the conclusion that the exclusion applies to all losses caused by underground water pressing up against foundations, regardless of whether that water came from a pipe or an aquifer.
Â¶6 To be clear, I don't fault McAlester Public Schools for thinking that this event ought to be covered--I, for one, would want insurance that protects my property from bursting water mains. Unfortunately, the school district bought insurance that does not, and courts are not (or at least they shouldn't be) in the business of re-writing contracts, even if a court's view of the equities tilts in the insured's favor. On that point, it's worth remembering that the insurer is the Oklahoma Schools Risk Management Trust, which is managed by Oklahoma public school officials and whose members are self-insuring Oklahoma school districts like the McAlester Public Schools.[4] The Trust didn't deny the claim in bad faith; it denied it because the loss is plainly excluded. The district court agreed, and so did the Court of Civil Appeals. The plain language of the exclusion plainly barred this claim then, and it continues to do so now.
Â¶7 The judgment below should be affirmed.

FOOTNOTES

[1] ROA, Doc. 3, Pl.'s 1st Am. Pet. for Declaratory Relief, at Ex. 1: "Plan of Coverage No. CPO-0071579-03," Form CP-11: "Div. 1 -- Causes of Loss -- Special Form" Â§ B(1)(g)(4), at 2.

[2] Id. Â§ B(1), at 1.

[3] Majority Op. Â¶ 25.

[4] Oklahoma Schools Risk Management Trust, https://www.osrmt.org (last visited Jan. 28, 2019).